Harrison *v.* Soffer et al., Appellants.

Argued November 10, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN and CERCONE, JJ. (SPAULDING, J., absent).

*William H. Eckert,* with him *Milton W. Lamproplos, Robert W. Doty, Leonard J. Wingert, Eckert, Seamans, Cherin & Mellott,* and *Carson & Wingert,* for appellants.

*Walter T. McGough,* with him *John T. Tierney, III, Daniel H. Shapira, John C. Unkovic,* and *Reed, Smith, Shaw & McClay,* for appellees.

OPINION BY WATKINS, J., April 13, 1972:

This appeal is from the judgment of the Court of Common Pleas, Civil Division, of Allegheny County,

which judgment was entered after a jury award in the amount of Three Hundred and Forty Thousand Dollars, ($340,000.00).

The facts in this case are as follows. Michael Harrison and E. M. Griswold, appellees, were partners in a consulting and finance business in the City of Pittsburgh. The appellants were the holders of an option on real estate in the State of Florida which they planned to develop. The appellants were in the business of developing real estate, having completed several very successful ventures in the Pittsburgh area. In order to accomplish their aims with the Florida property, they were in need of additional money. Harry Soffer, one of the appellants, lived in the same apartment house as Michael Harrison, one of the appellees, and had informal discussions with him regarding the Florida project. In the fall of 1967, the appellees and appellants entered into an informal oral agreement whereby the appellees would attempt to find the required financing for the project. There was a disagreement between the parties at the trial as to whether any amount of compensation had been agreed to in this oral agreement. The appellees made many contacts in an attempt to secure the required financing, without success. However, through Mr. Harrison's nephew, who lived in Texas, they were put in contact with a Bernard Kemp. Through this contact, the name of Joseph Boneparth of New York and Florida was given to the appellees as one with possible interest in such a project. The appellees then informed the appellants of his name, address and telephone number and asked them to contact him. The appellants did in fact contact Mr. Boneparth, who apparently brought in another gentleman by the name of Harry August who had contacts with the John Hancock Mutual Life Insurance Company. After many meetings and much negotiation, the appellants received from the

John Hancock Mutual Life Insurance Company a letter of commitment on the Florida project for the purchase and lease back of this property after listed improvements were accomplished. This letter of commitment was then taken by the appellants to secure the immediate financing necessary to satisfy the John Hancock conditions to the Chase-Manhattan Bank. The appellees, after making the referral of the appellants to Boneparth in March, 1968, sent to the appellants the following letter for signature by the appellants which formed the written contract by the parties.

"Michael Harrison—E. M. Griswold
Consultants
Mergers—Acquisitions—Financing
401 Wood Street
Pittsburgh, Pennsylvania 15222
471-0904

"March 8, 1968

Michael Harrison—
E. M. Griswold—
Pittsburgh, Pa.

Gentlemen:

"I and my associate or associates, do hereby agree to use the services of Michael Harrison and E. M. Griswold, to interest an investor, that will invest with me in my project on Miami Beach, the sum of $12,000,000 or $15,000,000, or such lesser amount as I agree to accept, for an interest in the project in the amount of 25% or 50%, or such percentage as may be mutually agreed upon between your investor and myself.

"This agreement is to cover just one potential investor, fully described below, whether the investment be made as an individual, a group, or a corporation.

"There are two men involved: Mr. Bernard Kemp, the 3rd, of Dallas, Texas, and Mr. Joseph Boneparth, of

122 East 42nd St., New York City, Phone No. MU-7-2888; also of Hillcrest Apartments, Hollywood, Florida, Phone No. 981-8215, where he will be for the week commencing March 7th. We understand that Mr. Boneparth is a partner in the Stock Exchange house of Bear-Stearns, and has banking connections with Eufatik of Zurich, Switzerland.

"If said parties or their associates, either individually or collectively, under whatever name they may choose to operate, enter into an agreement with me along the lines specified in Paragraph One above, or under any other basis accepted by me, I herewith agree to pay you a commission or fee of 2-1/3% of whatever amount is put into the said Miami Beach project, whether in the form of loan or of capital investment, or both, or on whatever basis said monies are invested in the project.

"If at any time during these pending negotiations, I and my associate or associates decide to organize a corporation to handle the project, I agree to have said corporation execute an agreement embodying the aforesaid terms and conditions.

"This contract good for ninety (90) days.

/s/ Harry Soffer"

The letter of commitment and the financing from Chase-Manhattan were secured in August, 1968. On June 28, 1968, E. Lebowitz went to the offices of the appellees and after some discussions, the appellees signed an agreement and release of liability to the appellants for the sum of Seventy-five Thousand Dollars ($75,000.00). A tender of payment by appellants was refused by the appellees, who alleged the agreement and release were secured through fraud on the part of the appellants. The appellees then filed a complaint in assumpsit alleging the written agreement as set forth above and also the general oral agreement which they had with the

appellants since the fall of 1967 as the basis for their claim.

This matter was sent to the jury by the court below, giving to them the matter of deciding whether or not the appellees were entitled to recover and whether they had fulfilled their obligation under the written agreement and/or the oral agreement and also whether or not there was an oral agreement. This was error which would require a new trial.

The written agreement of March 8, 1968, was prepared by the appellees and executed by the appellants at the appellees' insistence and it was without question the intent of the parties to form the basis of any future relation between the parties concerning this transaction.

The Restatement, Contracts, Section 240, reads as follows:

"§240. IN WHAT CASES INTEGRATION DOES NOT AFFECT PRIOR OR CONTEMPORANEOUS AGREEMENTS.

"(1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and

"(a) is made for separate consideration, or

"(b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract.

"(2) Where no consideration is stated in an integration, facts showing that there was consideration and the nature of it, even if it was a promise, or any other facts that are sufficient to make a promise enforceable, are admissible in evidence and are operative."

The question of whether or not there was an integration of the oral contract and the written one is one

of law for the court to decide. *Gianni v. Russell & Co., Inc.,* 281 Pa. 320, 126 A. 791 (1924).

The oral contract, as alleged by the appellees, would certainly be inconsistent with the written agreement prepared by the appellees and the consideration for the one was the same as for the other. As stated in *Gianni v. Russell & Co., Inc.,* supra, at page 323, " 'Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement' [citing cases]. 'All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence' [citing cases]."

However, the most serious question raised by this appeal is whether the appellees have any standing to collect no matter how the contractual problems are resolved.

Appellant urges that any recovery by appellees is barred by the Real Estate Brokers License Act of 1929, May 1, P. L. 1216, as amended, 63 P.S. §431. Appellees admit that they were not licensed real estate brokers but were "finders" and therefore do not come within the prohibition of the act.

The relevant portion of the act, supra, is as follows:

"The term 'real estate broker' shall include all persons, copartnerships, associations, . . . who, for another and for a fee, commission, or other valuable consideration, shall . . . negotiate the sale, . . . purchase or rental, or shall offer or attempt to negotiate the sale . . . purchase, or rental . . . of any real estate, interest in real estate, the property of another, whether the same shall be located within the State of Pennsylvania, or else-

where . . . or shall negotiate or offer or attempt to negotiate a loan, secured or to be secured by . . . transfer of any such real estate. . . . One act in consideration of compensation, by fee, commission or otherwise, of buying, selling, renting . . . any such real estate of or for another or attempting or offering so to do, or negotiating a loan upon or leasing or renting or placing for rent any such real estate . . . shall constitute prima facie evidence that the person, copartnership, association . . . so acting or attempting to act, is a real estate broker within the meaning of this act."

The most recent appellate court decision does not give the statute as narrow an interpretation as contended for by the appellees, but on the contrary holds that the mere introduction of two willing parties comes within the purview of the statute. *Alford v. Raschiatore,* 163 Pa. Superior Ct. 635, 63 A. 2d 366 (1949).

The only question before us is whether the contract as finally determined is enforceable under the Real Estate Brokers Act, supra. In *Verona v. Schenley Farms Co.,* 312 Pa. 57, 167 Atl. 317 (1933), the plaintiff claimed he was not "engaged in the real estate business" but the court held that such an averment in the face of the agreement to use his best efforts in presenting to the prospective buyer the special, particular and peculiar advantages of the land in question as being the most "fitting, suitable and desirable location . . ." was a mere denial of what the statute defines as "acting in the capacity of a real estate broker;" and as the Court said at page 638 in *Alford v. Raschiatore,* supra, "a denial which, therefore, amounts to nothing."

That is exactly the situation we have in the instant case and as the court further said in *Alford,* supra, at page 639:

"We cannot give to the word 'negotiate,' in the sense intended by the Legislature, the strict con-

struction contended for by appellee. If we should so do, it would exclude from the regulatory purpose of the Act a great percentage of brokers and salesmen who normally do no more than acquaint prospective buyers and sellers with the location and price of available property, and who annually comply with the licensing feature of the Act in the belief that they are covered by it."

Judgment reversed and judgment, n.o.v., entered for appellants.

CONCURRING OPINION BY CERCONE, J.:

Although I concur in the opinion of Judge WATKINS, I would like to supplement it with the following reason.

Plaintiffs brought suit to recover commissions from defendants for allegedly finding an investor in defendants' business enterprise on the basis of two contracts, one oral and one written. At trial the jury returned a verdict of $340,000 in favor of plaintiffs based on the oral contract. (Plaintiffs and the lower court agree that the verdict was not based on the written agreement.) The defendants' motions for judgment n.o.v. or a new trial having been refused, this appeal was taken.

One question presented is whether there is sufficient evidence to support the verdict based on the oral agreement. Plaintiffs alleged that in June of 1967, they entered into an oral agreement with defendant Harry Soffer, acting for the other defendants, wherein plaintiffs were promised a commission at a fixed percentage if they found an investor who was willing to invest money in a Florida real estate project which defendants were developing (hereinafter referred to as "Enterprise"). Despite this allegation in their pleadings concerning a fixed percentage for commission, plaintiffs amended their pleadings to allege they were also entitled under the oral agreement to recover on a quantum meruit basis for the value of their services. De-

fendants denied that any such oral agreement was entered into. In March of 1968, plaintiffs and defendants entered into a written agreement in which defendants agreed to pay plaintiffs 2-1/3% of whatever money was invested in Enterprise by a Joseph Boneparth and a Bernard Kemp or their associates. Defendant Soffer, also acting for the other defendants, met with Mr. Boneparth in Florida a few weeks after the written agreement was entered into. Boneparth brought with him to the meeting a Mr. Henry August and August in turn brought with him two men from the John Hancock Mutual Life Insurance Company of Boston ("Hancock"). Boneparth and Henry August turned out to be real estate brokers and not investors and were only interested in finding an investor for defendants' real estate project so that they themselves might earn a commission. There was no evidence at trial that either Henry August or Hancock were associates of Boneparth, Kemp or of plaintiffs. Hancock showed an interest in defendants' Enterprise and was able to interest another firm, Arlen Properties, Inc., also in the project. At no time prior to or during the negotiations between defendants and Hancock did plaintiffs ever think of, talk to, or mention to Hancock about Enterprise, or ever mention Hancock to defendants at any time.

On June 28, 1968, plaintiffs agreed in writing to accept the sum of $75,000 in payment of all commissions that could be due them, which agreement at a later time plaintiffs rejected because, they alleged subsequently in their pleadings, defendants had misrepresented facts which led plaintiffs to agree to accept $75,000.

Defendants met with representatives of Hancock on August 13, 1968 in Boston. In attendance at this meeting, in addition to defendants and a representative of

Hancock, were Henry August, Joseph Boneparth, and Arthur Cohen of Arlen Properties, Inc. At that meeting Arlen Properties and defendants entered into a joint venture agreement. The salient provisions of this agreement were that the joint venture would acquire, develop and operate defendants' land (Enterprise) in Florida; that Arlen Properties was to procure a commitment from Hancock and also an interim commitment from a lending institution for twenty-four million dollars; and that Arlen Properties was to loan two million dollars to the joint venture and half of any additional funds needed over the money borrowed to improve the property as required.

Arlen Properties obtained the commitment of Hancock and on August 19, 1968 Hancock executed a "Land Purchase and Lease Commitment" to Arlen Properties and defendants which they accepted in writing on or before September 2, 1968. By that commitment Hancock agreed to purchase defendants' real estate between December 1, 1971 and December 31, 1971 for a maximum of twenty-four million dollars provided certain conditions had been fulfilled to the satisfaction of Hancock including zoning approval of the master plan of the development, retaining walls, roadways, sewer, water, gas and electric lines, and other improvements. The commitment provided that if the conditions were fulfilled, Hancock would buy the property and lease it for fifty years to a joint venture limited partnership in which Arlen Properties, the defendants, and Hancock, or their nominees, would each have a 32-1/6th interest. The remaining 3-1/2% interest in this joint venture was to be assigned to Henry August and Joseph Boneparth in payment of brokerage commissions due them. Defendants obtained interim financing from Chase-Manhattan Bank to a limit of twenty-four million dollars to be drawn as the development of the prop-

erty progressed. The bank was secured by a mortgage on the Florida real estate (Enterprise), but other than for that mortgage security the loan from the bank was obtained on defendants' credit and not on Hancock's.

In the pleadings defendants alleged that plaintiffs not only did not obtain Hancock as an investor, but were further barred from recovery because they were not licensed as required by the Real Estate Brokers License Act of 1929, May 1, P. L. 1216, as amended, 63 P.S. §431 et seq. Plaintiffs admitted they were not so licensed but alleged they were not required to do so.

Up to the time for trial Hancock had not invested any money in Enterprise.

On the basis of the record I concur with the majority opinion that the lower court should have granted defendants' motion for judgment n.o.v. The jury's verdict, concerning which plaintiffs and the lower court agree, clearly rejected plaintiffs' claim under the written contract. This verdict, in effect, took away plaintiffs' claim that they obtained Hancock as an investor in Enterprise because only in accordance with the written agreement could it possibly be said that Hancock came into the Enterprise picture as a possible investor.

So far as plaintiffs' case in support of the oral agreement is concerned, there is a complete lack of evidence that plaintiffs had in any way obtained Hancock as an investor. Plaintiffs never thought of Hancock as an investor, never talked to or negotiated with Hancock at any time concerning Enterprise, nor did they ever mention Hancock to defendants as an investor in Enterprise. Therefore, since the written agreement was rejected by the jury and plaintiffs' case in support of the oral agreement lacks any evidence that they obtained Hancock as an investor, the jury's verdict based on the oral agreement was completely without support in the evidence.

Consequently, for this additional reason the judgment should be reversed and judgment n.o.v. should be entered for the appellants.