Anita L. CAMPANARO, Lois Diggins, Janice M. Duffy, Nancy A. Foster, Melissa K. Fultz, Patricia Kay Germann, Mary Ann Grove, Karen A. Hallman, Theresa M. Heane, Kimberlee A. Johnnie, Michelle R. Jones, Rhonda E. Miller, Gloria J. Morgan, Cathy D. Reifsteck, Beverly J. Rosenberry, Kimberly A. Sager, Paula J. Schunk, Robin M. Washington, Patricia A. Wertz, Beverly M. Wilson, Leann B. Wray, Appellants,

v.

**PENNSYLVANIA ELECTRIC COMPANY,**

v.

**Utility Workers Union of America, Local Union NO. 180, AFL–CIO, Appellees.**

Superior Court of Pennsylvania.

Argued June 8, 1999.

Filed Sept. 8, 1999.

---

474

Stephen D. Wicks, Altoona, for appellants.

William J. Payne, Wayne, for PA Electric Co., appellee.

Marianne Oliver, Pittsburgh, for Utility Workers Union, appellee.

Before JOHNSON, LALLY–GREEN and HESTER, JJ.

LALLY–GREEN, J.:

¶ 1 Appellants, Anita L. Campanaro, Lois Diggins, Janice M. Duffy, Nancy A. Foster, Melissa K. Fultz, Patricia Kay Germann, Mary Ann Grove, Karen A. Hallman, Theresa M. Heane, Kimberlee A. Johnnie, Michelle R. Jones, Rhonda E. Miller, Gloria J. Morgan, Cathy D. Reifsteck, Beverly J. Rosenberry, Kimberly A. Sager, Paula J. Schunk, Robin M. Washington, Patricia A. Wertz, Beverly M. Wilson, and Leann B. Wray, appeal the trial court's grant of summary judgment entered in the Court of Common Pleas of Blair County. We affirm.

¶ 2 Preliminarily, we note that the record reveals that Appellants initiated this class action lawsuit after exhausting all administrative remedies against Appellee, Pennsylvania Electric Company ("Penelec").[1]

¶ 3 The record reflects that on August 26, 1993, Appellants filed a complaint against Penelec alleging that wage rates negotiated between Penelec and Appellants' union, Utility Workers Union of America, Local Union No. 180, AFL–CIO ("Local 180"), discriminated against Appellants because of their sex in violation of the Pennsylvania Human Relations Act, 43 P.S. §§ 951–963 ("PHRA"). At all relevant times, Appellants were employees of Penelec and members of a collective bargaining unit of Local 180.

¶ 4 Appellants belonged to clerical/commercial employment classifications that, together with janitorial employees, were subject to a wage freeze. Of these 42 clerical/commercial and janitorial employees, 39 were female. Although some of the Appellants belonged to the commercial employment classification, these members' essential functions were clerical. We will, therefore, refer to the classifications of which Appellants were members as clerical.

¶ 5 In August 1990, the collective bargaining agreement that governed relations between Local 180 and Penelec expired. On August 23, 1990, Local 180 ratified a new collective bargaining agreement that

---

1. A party seeking relief under the Pennsylvania Human Relations Act must exhaust available administrative remedies before he or she may obtain judicial review. 43 P.S. § 962; *Schweitzer v. Rockwell International*, 402 Pa.Super. 34, 586 A.2d 383, 386 (1990). Although Appellants were able to seek judicial review with respect to Penelec, Appellants were precluded from asserting a claim against Utility Workers Union of America, Local Union No. 180, AFL–CIO, because Appellants failed to timely file a discrimination claim against Local 180 with the Pennsylvania Human Relations Commission. *Campanaro v. Pennsylvania Elec. Co.*, 440 Pa.Super. 519, 656 A.2d 491, 492 n. 1 (1995).

increased compensation for members who were not in Appellants' employment classification, approximately 92 percent of whom were males. Wages were frozen for the clerical classification as well as for the janitorial classification. Wages were also frozen for two unskilled labor classifications; however, no unskilled laborers were employed at the time. In lieu of wage increases, cash performance rewards were given in lump sum payments to members of these classifications.

¶ 6 In defending this lawsuit, Penelec alleges that this wage structure reflected an effort to move pay scales to competitive levels because clerical employees were being paid significantly more than similar workers in other area businesses and utilities as well as the established norms for the utility industry. Appellants contend that this wage structure was the result of sex discrimination in violation of the PHRA.

¶ 7 On October 27, 1993, Penelec filed preliminary objections to Appellants' complaint. On March 8, 1994, the court granted Penelec's preliminary objections and dismissed Appellants' complaint for lack of jurisdiction and failure to join an indispensable party, Local 180. Thereafter, the court denied Appellants' petition for reconsideration, and Appellants appealed to this Court.

¶ 8 On February 10, 1995, this Court reversed and remanded after finding that Local 180 was not an indispensable party because Appellants sought equalization of pay increases from Penelec and sought no relief from Local 180. *Campanaro v. Pennsylvania Elec. Co.*, 440 Pa.Super. 519, 656 A.2d 491, 493 (1995). On October 3, 1995, our Supreme Court denied Penelec's petition for allowance of appeal. *Campanaro v. Pennsylvania Elec. Co.*, 542 Pa. 639, 666 A.2d 1049 (1995). Penelec thereafter joined Local 180 as an additional defendant.

¶ 9 On January 30, 1995, the trial court granted Penelec's preliminary objections in the nature of a motion to strike Appellants' demand for a jury trial.[2] Thereafter, Penelec and Local 180 filed motions for summary judgment alleging that Appellants failed to establish a *prima facie* case of disparate treatment sex discrimination under the PHRA; or, even assuming *arguendo* that they did, Penelec produced legitimate, nondiscriminatory reasons for the payment structure. The motions further alleged that Appellants failed to establish a *prima facie* case of disparate impact sex discrimination because: the disparate impact model is not applicable to collectively-bargained and market-based wage compensation systems; Appellants failed to present any evidence of disparate impact; and Appellees negated any claim of disparate impact by demonstrating that the collective bargaining proposal was based on a "legitimate business justification." Appellee's Brief at 44–45. On June 5, 1998, the court granted Appellees' motions for summary judgment. This appeal followed.

¶ 10 Appellants raise the following issues on appeal:

I. The Lower Court Erred in Dismissing [Appellants'] Claims For Sex Discrimination Based Upon The Theory of Disparate Treatment;

II. The Lower Court Erred in Its Selection of Standards For Summary Judgment; and

III. The Lower Court Erred in Dismissing [Appellants'] Claims for Sex Discrimination Based Upon The Theory of Disparate Impact.

Appellants' Brief at 4.

¶ 11 Our standard of review of an order granting summary judgment is well settled. Summary judgment may be properly entered only where (1) there is no

---

**2.** There is no right to a jury trial under the PHRA. 43 P.S. §§ 951–963; *Walker v. Grand Central Sanitation, Inc.*, 430 Pa.Super. 236, 634 A.2d 237, 238 n. 1 (1993), *appeal denied,* 539 Pa. 652, 651 A.2d 539 (1994).

genuine issue of material fact as to a necessary element of the cause of action which could be established by additional discovery or an expert report, or (2) after completion of discovery and production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action. Pa.R.Civ.P. 1035.2. When reviewing the propriety of a trial court's grant of summary judgment in this Commonwealth, we must view the record in the light most favorable to the non-moving party and determine whether the moving party established that no genuine issue of material fact exists, thus entitling it to judgment as a matter of law. *Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.*, 704 A.2d 665, 668 (Pa.Super.1997). In making this determination, the non-moving party is entitled to all reasonable inferences. *Id.* Any doubts as to the existence of a factual dispute are resolved in favor of the non-moving party. *Id.* Summary judgment is appropriate only in the clearest of cases. *Id.* With these principles in mind, we proceed to examine whether summary judgment was properly granted.

## I.

¶ 12 Appellants first complain that that the court erred in dismissing their sex discrimination claims based on the disparate treatment theory. Specifically, the trial court stated that while it did not believe that Appellants had established a *prima facie* case of intentional discrimination, even if they had, Appellee clearly had legitimate, non-discriminatory reasons for its adverse employment action. Trial Court Opinion, 6/5/98, at 9–11.

¶ 13 The PHRA and its federal counterpart, Title VII, clearly define unlawful discriminatory practices. Under the PHRA, it is unlawful for any employer because of sex to discriminate against an individual with respect to, among other things, compensation if the individual is the best able and most competent to perform the services required. 43 P.S. § 955(a). Under Title VII, it is similarly unlawful for an employer to discriminate against any individual with respect to, among other things, hiring, compensation or terms or conditions of employment because of sex. 42 U.S.C. § 2000e–2(a).

¶ 14 In employment discrimination cases, Pennsylvania courts utilize the analytical model adopted by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Fairfield Township Volunteer Fire Co. No. 1 v. Commonwealth, Pennsylvania Human Relations Commission*, 530 Pa. 441, 444, 609 A.2d 804, 805 (1992). Under that model, the plaintiff bears the burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. *Bailey v. Storlazzi*, 729 A.2d 1206, 1212 (Pa.Super.1999). A *prima facie* case is established by showing that complainant is a member of a protected class, has suffered an adverse employment action and others not in the protected class have been treated differently. *Kryeski v. Schott Glass Technologies, Inc.*, 426 Pa.Super. 105, 626 A.2d 595, 597–98 (1993), *appeal denied*, 536 Pa. 643, 639 A.2d 29 (1994).

¶ 15 If plaintiff proves his or her *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. *Bailey*, 729 A.2d at 1212. If defendant meets this burden, then plaintiff has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but, rather, a pretext for discrimination. *Id. See also Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The ultimate burden of proving intentional discrimination returns to the plaintiff even after the employer offers its legitimate, nondiscriminatory reasons for the employment action. *Bailey*, 729 A.2d at 1212. In other words, the ultimate

burden of proof remains with the plaintiff throughout the entire case.

¶ 16 Appellants contend that they established a "minimal *prima facie* case" because the evidence demonstrated that: Appellants were members of the protected class of women; approximately 93 percent of clerical employees were women; and the study performed on Appellants' clerical group that "in part" led to the wage freeze was not performed on Penelec's other employment classifications. Appellants' Brief at 19–20.

¶ 17 Here, the record reveals the following. Appellants belong to the protected class of women. Appellants represented 39 of the 57 female employees of Penelec; the remaining 18 women were not members of Appellants' employment classification group and were not subject to the wage freeze.

¶ 18 Penelec's proposal to the union to freeze the wages of the subject classifications, which included, but was not limited to, Appellants' employment classification, was based on several factors. One factor was an independent audit performed by the Pennsylvania Utility Commission ("PUC") during 1990, the year of the negotiations at issue. This audit consisted of a comprehensive examination of virtually all aspects of Penelec's business, including wage and salary levels. A conclusion contained in the audit report was that wage rates paid to Penelec's clerical employees were not in line with market wage rates for the same positions.

¶ 19 Additional factors considered by Penelec were other surveys or studies of job classifications/wage rates, *e.g.*, the Edison Electric Institute ("EEI") Industry Survey of job classifications and wage rates, Occupational Wage Surveys for the Johnstown and Altoona Metropolitan Statistical Areas conducted by the Commonwealth of Pennsylvania, Department of Labor and Industry, the 1989 Annual Wage and Salary Report compiled by the Cambria–Somerset Personnel Association, and the market study conducted by Hay Management Consultants of New York at Penelec's request. All of these surveys or studies reached the conclusion that wage rates paid to Penelec's clerical employees were significantly higher than market wage rates for the same positions. On the basis of these surveys and studies, Penelec proposed that the union freeze the wages of certain Penelec job classifications, including Appellants' clerical classification, as well as the janitorial classification and two unskilled labor classifications (presently unfilled).

¶ 20 Appellants argue that they have established "a minimal *prima facie* case" because the evidence showed that the Hay's study commissioned by Penelec, which led "in part" to the wage freeze, was not performed on Penelec's other employment classifications. Appellant's Brief at 19–20. Thus, the alleged "different" treatment was the failure of Penelec to authorize the Hays study for other job classifications.

■ ¶ 21 We note that, in making this statement, Appellants concede that other factors contributed, at least "in part," to the wage freeze. All of the other surveys and studies relied upon by Penelec in making the decision to freeze the wages of its clerical employees are not opposed or contradicted in any way by the Appellants. Pointedly, Appellants do not even address the findings of the two *independent* studies performed by the PUC and the EEI.[3] Nevertheless, Appellants urge that the mere fact that Penelec did not commission the Hay Management Group to perform a similar study of other male-dominated classifications establishes Penelec's discriminatory motive. Again, in light of all of the overwhelming evidence before Penelec which established that the clerical clas-

---

**3.** The EEI is an industry association of numerous power and utility companies located throughout the United States, of which Penelec and other power companies are members. R.R., p. 108a.

sification was significantly overpaid, the mere fact that Penelec chose not to broaden its inquiry into other classifications does not render its decision to freeze clerical wages discriminatory.

¶ 22 Following a review of this record, we agree with the learned trial court that Appellants failed to establish a *prima facie* case of gender discrimination, *i.e.*, that Penelec intended to discriminate against Appellants because of their sex. While the Appellants urge that the job classifications which were affected by the wage freeze were the ones in which females were concentrated, this fact by itself is not determinative. Further, in focusing solely on this fact, Appellants ignore other pertinent evidence. Specifically, over 31% of the women employed by Penelec were not in the subject classification and, thus, not subject to the wage freeze. Moreover, the classifications subjected to the wage freeze also included several male employees. This evidence supports the conclusion that the wage freeze was based upon job classification rather than gender distinctions.

¶ 23 Even assuming *arguendo* that Appellants established a *prima facie* case, Penelec articulated legitimate, nondiscriminatory reasons for the employment action, *i.e.*, that their employees were significantly overpaid in the context of what the market paid. And further, Appellants failed to demonstrate that Penelec's reasons were pretextual for discrimination. Thus, the trial court did not err in granting summary judgment in favor of Penelec on a disparate treatment theory.

## II.

¶ 24 Appellants next complain that the trial court erred in granting summary judgment in favor of Appellees because the trial court applied the incorrect standard in determining whether the Appellants produced sufficient evidence to go forward. Specifically, the trial court adopted the test articulated by the First Circuit Court

of Appeals and concluded that an employer is entitled to summary judgment if the evidence, taken as a whole, would not allow the factfinder reasonably to infer that the actual reason for the wage disparity was gender based. Trial Court Opinion, 6/5/98, at 7–8.

¶ 25 The background to this issue is as follows. In *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Supreme Court established that a plaintiff was not automatically entitled to judgment as a matter of law at trial if he or she established a *prima facie* case of discrimination and discredited an employer's articulated reasons for the employment decision. *Hicks*, 509 U.S. 502, 113 S.Ct. at 2749. Instead, the Court held that the plaintiff has the ultimate burden of persuasion throughout the case and, thus, must convince the factfinder "both that the reason was false, and that discrimination was the real reason." *Id.*, 509 U.S. 502, 113 S.Ct. at 2752.

¶ 26 While *Hicks* resolved the issue of whether the plaintiff is entitled to judgment as a matter of law at trial where he or she offers evidence of pretext, it did not address the test for the grant of summary judgment in a pretext case under Title VII. Following *Hicks*, a pervasive split developed in the federal courts of appeal as to what standard to apply when determining whether a plaintiff can survive summary judgment as a matter of law following the defendant's introduction of legitimate, nondiscriminatory reasons for an employment action.

¶ 27 Under the test adopted by the First Circuit Court of Appeals, a plaintiff can survive summary judgment after the employer offers its legitimate, nondiscriminatory reason only by coming forward with evidence sufficient for the factfinder to reasonably conclude that the employer's action was based on discrimination. *Hidalgo v. Overseas Condado Insurance Agencies, Inc.*, 120 F.3d 328, 335 (1 st Cir.

1997).[4] In other words, in order for the plaintiff to prove that the reason given by the employer was a pretext for discrimination, he or she must show both that the reason was false and that discrimination was the real reason for the employment action. *Hidalgo*, 120 F.3d at 335.

¶ 28 The Eleventh Circuit's test is a slightly relaxed one. In the Eleventh Circuit, a plaintiff can survive summary judgment after the employer offers legitimate, nondiscriminatory reasons for its employment action merely by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's offered reasons. *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 967 (11th Cir.1997).

¶ 29 We have determined above that: 1) Appellants failed to set forth a *prima facie* case of gender discrimination under the PHRA; and 2) even if they had, they failed to offer any evidence to establish that Penelec's legitimate, nondiscriminatory reasons were false or pretextual. Thus, we need not address the issue of whether the trial court applied the correct standard in granting summary judgment. In other words, since Appellants failed to present any evidence that would demonstrate a genuine issue of material fact as to the falsity of Penelec's reasons for the adverse employment decision or as to the fact that Penelec's reasons were pretextual, Appellants would have been unable to survive summary judgment under either the First Circuit or the Eleventh Circuit test. Nevertheless, since the standard used by the trial court was consistent with the law in Pennsylvania on summary judgment, and since summary judgment was appropriate under either standard suggested by Appellant, we find no error with the standard used by the trial court.

### III.

¶ 30 Appellants finally complain that the trial court erred in dismissing their claims for sex discrimination based on a disparate impact theory. In disparate impact cases, plaintiffs must demonstrate by a preponderance of the evidence that an employment policy or practice that is facially neutral in its treatment of different groups falls more harshly on one group than another and cannot be justified by job relatedness or business necessity. *See DiBiase v. SmithKline Beecham Corp.*, 48 F.3d 719 (3d Cir.1995), *cert. denied*, 516 U.S. 916, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995). *See also*, 42 U.S. 2000e–2(k).

¶ 31 Here, Appellants failed to demonstrate that a facially neutral policy or practice caused disparate impact on a protected group. As the trial court succinctly stated:

The Plaintiffs only conceivable argument is that Penelec had relied upon the market to adjust its surveys, and "reliance in the market is inherently job related and is a built-in form of business judgment." *Beard v. Witley [Whitley] County REMC*, 656 F.Supp. 1461, 1469–70 (N.D.Ind.1987), *affirmed*, 840 F.2d 405 (7th Cir.1988)....

Trial Court Opinion, 6/5/98, at 22. Therefore, the record fails to support the conclusion that the trial court erred when it granted summary judgment in favor of both Appellees because disparate impact could not be demonstrated.

¶ 32 Order affirmed.

4. We observe that Pennsylvania courts may look to federal court decisions interpreting Title VII when interpreting the PHRA, although these decisions are not binding on our courts. *Hoy v. Angelone*, 456 Pa.Super. 615, 691 A.2d 485, 486 n. 2 (1997), *aff'd but remanded for consideration of attorney's fees*, 554 Pa. 134, 720 A.2d 745 (1998).