Michael P. MEYER, Appellant,

v.

GWYNEDD DEVELOPMENT GROUP, INC., Gwynedd Venture Associates, Inc., Theophile J. Mignatti, Jr., Augie W. Mignatti, Jr., Augie W. Mignatti, Joseph A. Mignatti, and Daniel J. McNichol, Individually, Appellees.

Superior Court of Pennsylvania.

Submitted May 1, 2000.

Filed July 7, 2000.

Mark C. Clemm, Plymouth Meeting, for appellant.

Paul W. Callahan, Norristown, for appellees.

Before KELLY, J., CERCONE, President Judge Emeritus, and BROSKY, J.

CERCONE, President Judge Emeritus:

¶ 1 This is an appeal from an order that granted summary judgment in favor of Defendants/Appellees Gwynedd Development Group, Inc., Gwynedd Venture Associates, Inc., Theophile J. Mignatti, Jr., Augie W. Mignatti, Joseph A. Mignatti, and Daniel J. McNichol (hereinafter collectively referenced as "Appellees" or "Defendants"). We affirm.

¶ 2 Appellant, Michael P. Meyer, initiated the action underlying this appeal in October of 1988 for the purpose of recovering over $139,000 in real estate commissions allegedly owed to him for his services in marketing and selling dwelling units in a residential plan known as "The Village at Gwynedd." The matter has followed a complex procedural course over a ten and one-half year period, including requests for

temporary restraining orders and an interlocutory appeal by allowance on a collateral matter. *See Gwynedd Development Group, Inc. et al. v. Department of Labor and Industry, Bureau of Labor Standards,* 666 A.2d 365 (Pa.Commw.1995), *appeal granted in part,* 544 Pa. 218, 675 A.2d 1220 (1996).[1]

¶ 3 The Honorable Richard S. Lowe aptly explained the factual history of the case as follows:

Around August, 1985 Mr. Meyer entered into a written agreement with "defendants" under which Meyer was hired as the marketing and sales director for a real estate development known as the "Village at Gwynedd[."] That letter, dated August 29, 1985, on the letterhead of Historic Venture Associates, Inc., provided that Mr. Meyer was to be marketing and sales director for the Village at Gwynedd. He was to be paid commissions on sales, with a bi-weekly draw against commissions of $1,000.[00], plus $250.[00] travel expenses.

Mr. Meyer carried out his responsibilities and successfully marketed and sold numerous units at the Village at Gwynedd. For a time he was paid his agreed upon compensation. As of July, 1997 he earned commissions in excess of $139,-000.[00], for which he has not been paid.

When Mr. Meyer began his employment he had discussions with defendant Theophile J. Mignatti, Jr. Mr. Meyer asked whether he would need to keep his real estate salesperson's license active, and was told by Mr. Mignatti that this would not be necessary because he would be an employee of Gwynedd.

The pace of sales slowed in late 1987 or early 1988. Plaintiff asserts, and we assume for purposes of this Motion, this was the result of poor construction management by defendant Gwynedd and a down turn in the economy. Around that time Mr. Mignatti approached Mr. Meyer and asked if Mr. Meyer could obtain a broker's license in order to enable Gwynedd to use the multiple listing services. The dispute between the parties arose around that time.

Trial Court Opinion, dated 9/2/99, at 3–4 (footnote omitted).

¶ 4 As previously noted, the litigation between and among the parties wended its way through the courts over a time period exceeding ten years. Ultimately, in July of 1999, the Trial Court granted Appellees' motion for summary judgment. *See* Order dated July 1, 1999, docketed July 2, 1999. Appellant's timely notice of appeal followed. On August 2, 1999, the Trial Court directed Appellant to file a Concise Statement of Matters Complained of on Appeal. Appellant complied on August 10, 1999.

¶ 5 The present appeal raises two issues for our consideration:

A.  DID THE LOWER COURT ERR IN FINDING THE PENNSYLVANIA REAL ESTATE LICENSING AND REGISTRATION ACT, 63 P.S. § 455.1010 ET SEQ., APPLIED TO APPELLANT/PLAINTIFF MICHAEL P. MEYER IN THIS PARTICULAR TRANSACTION?

B.  DID THE LOWER COURT ERR IN FINDING THAT APPELLANT/PLAINTIFF MICHAEL P. MEYER WAS REQUIRED TO BE LICENSED AS A BUILDER–OWNER SALESPERSON IN ORDER TO FILE SUIT AND RECOVER COMPENSATION FOR SERVICES RENDERED ON BEHALF OF APPELLEE/ DEFENDANT GWYNEDD DEVELOPMENT GROUP, INC.?

Appellant's Brief at 3. Our scope of review over a trial court's order granting

---

**1.** On May 21, 1996, our Supreme Court granted allowance of appeal limited to the following issue: Whether the Wage Payment and Collection Law violates due process by virtue of the prejudgment execution on an employer's assets if the employer fails to post a bond.

summary judgment is plenary. *Feden v. Consolidated Rail Corporation*, 746 A.2d 1158, 1161 (Pa.Super.2000). However, our standard of review is limited. We will reverse the judgment entered only if we find that the trial court committed an abuse of discretion. *Id.* In this context, abuse of discretion occurs "when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Id.*

¶ 6 Summary judgment properly may be entered only if (1) there is no genuine issue of material fact as to a necessary element of the cause of action which could be established by additional discovery or an expert report, or (2) after completion of discovery and production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action. *Campanaro v. Pennsylvania Electric Company*, 738 A.2d 472, 476 (Pa.Super.1999), *citing* Pa.R.C.P. 1035.2.

> When reviewing the propriety of a trial court's grant of summary judgment, we must view the record in the light most favorable to the non-moving party and determine whether the moving party established that no genuine issue of material fact exists, thus entitling it to judgment as a matter of law. In making this determination, the non-moving party is entitled to all reasonable inferences. Any doubts as to the existence of a factual dispute are resolved in favor of the non-moving party. Summary judgment is appropriate in only the clearest of cases.

*Id.* (citations omitted). *Accord Ertel v. Patriot–News Co.*, 544 Pa. 93, 98–99, 674 A.2d 1038, 1041 (1996).

¶ 7 Appellant first contends that the Trial Court erred in applying the Pennsylvania Real Estate Licensing and Registration Act (the "Act"), 63 P.S. §§ 455.101–455.902, to Appellant's role in effectuating the land sales at issue in this case. We cannot agree with Appellant's position in this matter. The Act establishes specific standards of conduct and licensing which pertain to all persons engaged in the sale or transfer of real property within this Commonwealth. *See, e.g.,* 63 P.S. § 455.301, *infra.* The sales underlying this case consisted of property transfers from the builder, a corporate entity engaged in the business of constructing and selling housing, to laypersons purchasing residential units. "A principal purpose of the Act is to protect buyers and sellers of real estate, the most expensive item many persons ever buy or sell, from abuse by persons engaged in the business." *Kalins v. Commonwealth, State Real Estate Commission*, 92 Pa.Cmwlth. 569, 500 A.2d 200, 203 (1985).[2]

¶ 8 Appellant cites to *Winthrop & Co., Inc. v. Milgrom*, 447 Pa.Super. 140, 668 A.2d 557 (1995) and to *Gruber v. Owens–Illinois, Inc.*, 899 F.2d 1366 (3d Cir. 1990) for the proposition that the Act does not pertain to real estate transfers devolving from "sophisticated business transactions." We note initially that the decisions of the Third Circuit Court of Appeals are not binding on Pennsylvania Courts, even when a federal question is involved. *Cambria–Stoltz Enterprises v. TNT Investments*, 747 A.2d 947, 952 (Pa.Super.2000). Nor is the Third Circuit's interpretation of Pennsylvania state law binding upon the Superior Court, although we may at times find its reasoning to be persuasive. *Id.*

¶ 9 The Third Circuit case cited by Appellant, *Gruber v. Owens–Illinois, Inc.*, stems from a parent corporation's efforts to divest itself of the stock and assets of a

---

**2.** We are cognizant of the fact that the Legislature enacted extensive amendments to the Act in 1990 and 1996, well after the *Kalins* decision was filed. However, none of these modifications in any way altered the underlying purpose of the Act which is to protect the public from abuse by those who are engaged in the business of trading real estate.

Pennsylvania subsidiary corporation. The subsidiary owned real property as part of its business assets. The Third Circuit held that the person who acted as a "business finder-broker" to facilitate the sale was entitled to seek his sales commission on the stock transfer, notwithstanding the fact that he was not licensed as a real estate broker in Pennsylvania. As such, the case implicates interests not at issue in the present appeal, which deals only with the sale of residential units to ordinary buyers and in no way concerns sophisticated commercial transactions involving stock or corporate interests.

¶ 10 *Winthrop* stems from the efforts of a "business broker" who was not licensed in Pennsylvania as a "real estate broker" to recoup commissions in connection with the sale of a commercial cleaning business and "related real estate." This Court held that the broker could recover his fees and commissions on that portion of the transaction attributable to the sale of the business. *Winthrop* applies the underlying rationale of *Gruber* which this Court found persuasive as it pertains to arms' length dealings between sophisticated parties. Because the procedural posture of the case precluded the development of a full record, the *Winthrop* Court remanded to the trial court for a determination of whether a transaction prohibited under the Act had occurred.

¶ 11 The facts in the present case, as found by the Trial Court, demonstrate that Appellant was engaged, on a commission plus draw basis, to market and sell dwelling units in a residential plan to ordinary homebuyers. *See* Trial Court Opinion at 3, 5–6. The certified record supports the Trial Court's conclusion in this regard. *See, e.g.,* Exhibit "P–1" (Letter of Understanding between T.J. Mignatti, Jr. of Historic Venture Associates, Inc. and Michael P. Meyer) and Exhibit "P–2" (Employment

Agreement between Gwynedd Development Group and Michael P. Meyer).[3] We thus conclude, as did the Trial Judge, that unlike the situation in *Winthrop & Co.* or in *Gruber,* the present case does not implicate sophisticated buyers trading or purchasing stock or business interests in corporate entities that happen to own real property as part of the business assets. We agree with the Trial Court's determination that the Act most certainly pertains to Appellant's sales of the residential properties in the Village of Gwynedd.

¶ 12 The real estate sales at issue in this case occurred between July of 1987 and August of 1988. At that time, the Act contained the following provisions that govern the questions presented by this appeal:

### Unlawful to conduct business without license or registration certificate

■ It shall be **unlawful for any person, directly or indirectly, to engage in or conduct,** or to advertise or hold himself out as engaging in or conducting the business, or acting in the capacity of a **broker or salesperson,** limited broker, limited salesperson, **builder-owner salesperson,** rental listing referral agent or cemetery company within this Commonwealth **without first being licensed or registered** as provided in this act, unless he is exempted from obtaining a license or registration certificate under the provisions of section 304.

63 P.S. § 455.301 (footnote omitted, emphasis added) (amended June 1990 by substituting the terms "cemetery broker" and "cemetery sales person" for "limited broker" and "limited salesperson" and amended July of 1990 by adding the terms "campground membership sales person"

---

**3.** The terms of Appellant's employment contract, as set forth in these exhibits indicated that he was entitled to receive a biweekly draw against commissions of $1,000 plus expenses of $250 for travel. Both of these items were drawn against the sales commissions which were to be calculated only after the settlements occurred on the units Appellant sold. *See* Exhibit "P–1" (Letter of Understanding) at ¶ (c).

and "time-share salesperson").[4] We note that even the mere introduction of a willing buyer and a willing seller comes within the purview of this provision. *See Harrison v. Soffer*, 221 Pa.Super. 275, 289 A.2d 752, 756 (1972).[5] *See also Golibart v. Reamer*, 415 Pa.Super. 623, 610 A.2d 56, 58–59 (1992), *appeal denied*, 532 Pa. 664, 616 A.2d 985 (1992) (the Act barred an individual who was not a licensed real estate broker from recovering a fee for finding investors in a development).

¶ 13 A "builder-owner salesperson" is:

Any person who is a full-time employee of a builder-owner of single and multi-family dwellings located within the Commonwealth and as such employee shall be authorized and empowered to list for sale, sell or offer for sale, or to negotiate the sale or exchange of real estate, or to lease or rent, or offer to lease, rent or place for rent, any real estate owned by his builder-owner employer, or collect or offer, or attempt to collect, rent for the use of real estate owned by his builder-owner employer, for and on behalf of such builder-owner employer. The term does not include any person employed by an owner of real estate for the purpose of managing or maintaining multi-family residential property: Provided, however, that such person is not authorized or empowered by such owner to enter into leases on behalf of the owner, to negotiate terms or conditions of occupancy with current or prospective tenants or to hold money belonging to tenants other than on behalf of the owner. The term "negotiate," as used in this definition does not mean the transmission of information between the owner and current or prospective tenants, such as retail amounts, building rules and regulations or leasing determinations, so long as the owner retains the authority to make all such decisions.

63 P.S. § 455.201 (Definitions).[6] A "salesperson" is:

Any person employed by a licensed real estate broker to list for sale, sell or offer for sale, to buy or offer to buy or to negotiate the purchase or sale or exchange of real estate or to negotiate a loan on real estate or to lease or rent or offer to lease, rent or place for rent any real estate or collect or offer or attempt to collect rent for the use of real estate for or in behalf of such real estate broker. No person employed by a broker to perform duties other than those activities as defined herein under "broker"

4. None of the exceptions listed in the pertinent version of section 455.304 pertains to the present appeal. *See* 63 P.S. § 455.304, **Historical and Statutory Notes**, Purdon's Supplementary Pamphlet (1995) (listing nine statutory exemptions to the licensing requirements of § 455.301 which were applicable between 1982 and 1990, the relevant timeframe of this case.).

5. *Harrison* was decided under the predecessor statute to the Act, the Real Estate Brokers License Act of 1929 (the Real Estate Brokers Act), which was repealed and substantially modified in 1980 by the Act at issue in this case. However, section 436(a) of the Real Estate Brokers Act and section 455.301 of the Act contain substantially the same operative language. *Compare* section 455.301, *supra*, with:

License required

   (a) From and after January 1, 1930, it shall be unlawful for any person, copartnership, association, or corporation to engage in or carry on the business, or act in the capacity of a real estate broker, or a real estate salesman, within this Commonwealth without first obtaining a license as a real estate broker or real estate salesman from the [D]epartment [of Public Instruction of Pennsylvania]....

63 P.S. § 436(a) (repealed, 1980 and replaced by section 455.301 of the Act). *See Harrison*, 289 A.2d at 756–758 (concurring opinion by Cercone, J. discussing the impact of section 436).

6. This definition was amended in June and July of 1990. *See* 63 P.S. § 455.201, **Historical and Statutory Notes**, Purdon's Supplementary Pamphlet (1995). The 1990 amendments deleted the second and third sentences from the definition of "builder-owner salesperson" which was applicable between 1982 and 1990.

shall be required to be licensed as a sales person.

*Id.* A "broker" is:

Any person who, for another and for a fee, commission or other valuable consideration:

(1) negotiates with or aids any person in locating or obtaining for purchase, lease or acquisition of interest in any real estate;

(2) negotiates the listing, sale, purchase, exchange, lease, financing or option for any real estate;

(3) manages or appraises any real estate;

(4) represents himself as a real estate consultant, counsellor [sic], house finder;

(5) undertakes to promote the sale, exchange, purchase or rental of real estate: Provided however, that this provision shall not include any person whose main business is that of advertising, promotion or public relations; or

(6) attempts to perform any of the above acts.

*Id.*

¶ 14 The question of whether a person fits within one of the above definitions encompassed by the Act is one of law to be decided by the trial court. *Golibart,* 610 A.2d at 58. In this case, the Trial Judge found that for all real estate sales pertinent to this case, Appellant actually served as a "builder-owner salesperson," a capacity in which he was not licensed to function pursuant to the Act. *See* Trial Court Opinion at 3–4. We agree with the Trial Court's assessment of the facts of record in this case.

¶ 15 Appellant concedes that the records of the Pennsylvania State Real Estate Commission indicate that his real estate salesperson's license was placed in escrow, and he is listed as "inactive," from July 15, 1985 until May 18, 1989. Appellant's Brief at 4. As noted above, the relevant real estate transactions occurred in 1987 and 1988, when Appellant's real estate license was in escrow. Appellant also essentially admits that he was never registered as a "builder-owner salesperson." *See* Appellant's Brief at 15–16. The certified record certainly fails to indicate that Appellant was ever so licensed, and the Trial Court found that he was not. Trial Court Opinion at 1. Additionally, the Trial Court found that Appellant was not a "broker" as that term is defined by the Act. *Id.* (In fact, the dispute that led to Appellees' refusal to pay Appellant the disputed commissions arose, at least in part, because Appellant was not licensed as a broker, and Appellees wanted him to obtain a broker's license. *See* Trial Court Opinion at 4.)

¶ 16 Pennsylvania law clearly precludes any person from recovering a commission or a fee for the transfer of an interest in real property if that person was required to be licensed pursuant to the Act, and was not so licensed at the time of the transaction:

**Civil suits**

No action or suit shall be instituted, nor recovery be had, in any court of this Commonwealth by any person for compensation for any act done or service rendered, the doing of which is prohibited under the provisions of this act by a person other than a licensed broker, sales person, limited broker, limited salesperson, builder-owner salesperson or rental listing referral agent, unless such person was duly licensed and registered hereunder as broker or salesperson at the time of offering to perform any such act or service or procuring any promise or contract for the payment of compensation for any such contemplated act or service.

63 P.S. § 455.302 (amended June and July of 1990 with the same substitutions and additions applied in § 455.301, *supra* ). Relying on the above statutory provisions, Judge Lowe concluded that the transactions at issue in this appeal constituted sales of an interest in land of the type which are covered specifically by the Act.

*See* Trial Court Opinion at 2–6. Under the circumstances of this case, we agree with the Trial Court's holding that Appellant is precluded by section 455.302 of the Act from bringing suit or recovering any commissions or fees for his activities on Appellees' behalf. There is no dispute of material fact that would permit Appellant to circumvent the full impact of this statutory provision. Consequently, the Trial Court was correct in granting summary judgment to Appellees.

¶ 17 We understand why Appellant contends so strongly that Appellees should be estopped by their conduct from enforcing the Act in this case. While we in no way condone Appellees' actions, we cannot grant the relief Appellant requests. The simple truth, as the Trial Court correctly held, is that the Act admits of no exception for estoppel that would permit a Pennsylvania Court to order *quantum meruit* relief. *See id.* at 4.

¶ 18 Order affirmed.

¶ 19 KELLY, J. files a Dissenting Opinion.

KELLY, J., dissenting:

¶ 1 "The purpose of the Real Estate Licensing and Registration Act at 63 P.S. §§ 455.101 – 455.902 is to protect buyers and sellers of real estate from abuse by persons engaged in the real estate business. *See Joseph A. Cairone, Inc. v. Edward M. Frey Realty,* 715 A.2d 536 (Pa. Cmwlth.1998); *Kalins v. Pennsylvania State Real Estate Commission,* [92 Pa. Cmwlth. 569, 500 A.2d 200, 203 (1985) ]." *Eill v. Tegler,* 722 A.2d 200, 202 (Pa.Super.1998) (Dissenting Opinion per Kelly, J.). The Act was not intended to protect persons not regularly engaged in the sale of real estate from suit by other persons not regularly engaged in the sale of real estate. It was not intended to protect real estate brokers from suit filed by other real estate brokers. Moreover, it was not intended to protect an employer who is engaged in the real estate business from suit

by an employee who is also engaged in the real estate business, where the suit arises out of the employment relationship.

¶ 2 In the instant case, the facts as stated in the trial court opinion are as follows. Appellant and his employer negotiated and entered into a written employment agreement under which Appellant was hired as the marketing and sales director for a real estate development known as the "Village at Gwynedd." The agreement provided that the employer would pay Appellant commissions on sales, with a draw against commissions of $1,000.00, plus $250.00 travel expenses. Appellant asked his employer whether he would need to keep his real estate salesperson's license current. Appellant's employer told Appellant that licensure was not necessary to the performance of Appellant's job function. As a result, Appellant allowed his license to lapse. For some time, the employer willingly paid Appellant's negotiated compensation, until the pace of sales slowed and business began to lag. By 1997, Appellant had earned in excess of $139,000.00 in commissions on completed sales, for which his employer had not paid him. Such an injustice should not be permitted.

¶ 3 I conclude that the Act does not preclude Appellant's suit against his employer, the Appellee. Therefore, I am compelled to dissent.