J-A08039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CATHERINE GUARNIERI | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| GUARDIAN WARRANTY CORPORATION AND CIVIC PARTNERS, LP D/B/A GUARDIAN WARRANTY CORP. | |
| Appellees | No. 1328 MDA 2014 |

Appeal from the Order Entered July 17, 2014
In the Court of Common Pleas of Luzerne County
Civil Division at No.: 17752-08

BEFORE: SHOGAN, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                **FILED JUNE 02, 2015**

Catherine Guarnieri appeals from the order entered on July 17, 2014, which granted the motion for summary judgment filed by Guardian Warranty Corporation and Civic Partners, LP d/b/a Guardian Warranty Corp. (collectively, "Guardian"). We affirm.

The trial court set forth the facts of the case as follows:

Upon commencement of her employment [at Guardian], [Guarnieri] was provided with a copy of [Guardian's] employee handbook which sets forth the policies and procedures for terminating the employee-employer relationship. [Guarnieri] signed an Employee Acknowledgment Form confirming that she received and reviewed the handbook. The acknowledgement states "either I or Guardian Warranty Corporation can terminate

_____

[*]     Retired Senior Judge assigned to the Superior Court.

the relationship at will, with or without cause, at any time, so long as there is no violation of applicable federal or state law."

[Guardian's] employee handbook specifically set[s] forth the policy governing medical leaves of absence. It states:

\* \* \*

Eligible employees are normally granted leave for the period of disability, up to a maximum of 12 weeks within any 12 month period. . . .

\* \* \*

When a medical leave ends, the employee will be reinstated to the same position, if it is available, or to an equivalent position for which the employee is qualified.

If an employee fails to return to work on the agreed upon return date, [Guardian] will assume that the employee has resigned. . . .

On October 17, 2006[, Guardian] adopted a revised employee-employer handbook which reiterated that eligible employees are entitled to a maximum of 12 weeks for a medical leave of absence within any twelve month time period.

The revised medical leave policy stated that if an employee fails to return to work on the agreed upon return date, [Guardian] will assume that the employee has resigned.

On March 1, 2007, [Guarnieri] maintains that she sustained a work related injury. [Guarnieri] alleged she was putting paperwork away when she felt a "pop" in her neck. On March 6, 2007[, Guardian] reported the injury to its workman's compensation carrier, indicating that [Guarnieri] was making a claim for workman's compensation benefits. On April 23, 2007, a month and 22 days after [Guarnieri] filed her workmen's compensation claim, [Guardian] promoted [Guarnieri] to the position of business analyst, with a pay raise accompanying the new job.

. . . [Guarnieri] provided [Guardian] with a note from her family physician stating that she was unable to work until further notice (due to her work injury). On June 25, 2007[,] [Guarnieri] was approved for Family Medical Leave under the [Family Medical Leave Act ("FMLA")]. On July 25, 2007, [Guardian] sent a letter

to [Guarnieri's] home address, via certified mailing, that under the FMLA [Guarnieri's] job was protected for up to 12 weeks and that she would be reinstated to the same or an equivalent position when she returned. This correspondence also advised [Guarnieri] that she was required to provide a fitness for duty certificate prior to being restored to employment. . . .

\* \* \*

[Guarnieri] did not respond to [Guardian] correspondence and accepted [Guardian's] payment of her health insurance premiums while she was on approved medical leave.

On October 2, 2007[,] [Guardian] sent [Guarnieri] a letter via certified mail stating in pertinent part the following:

> "We have not heard from you since you began your leave of absence under FMLA. Your 90 days have passed and your leave has expired. Since your medical leave has now expired, you need to contact me to make arrangements for your medical insurance. If I do not hear from you by Monday, October 8, 2007, [Guardian] will no longer pay for your medical insurance, however, you will become eligible for COBRA coverage. . . ."

It is undisputed [Guarnieri] never responded to [Guardian's] letter[s] sent on July 25, 2007[,] or October 1, 2007.

Then, on October 11, 2007 [Guardian] sent another certified mailing to [Guarnieri] explaining that [Guarnieri's] health insurance provided by [Guardian] would end on October 22, 2007[,] due to the end of her employment.

Trial Court Opinion ("T.C.O."), 10/7/2014, at 2-4 (citations and footnote omitted).

On December 22, 2008, Guarnieri filed a complaint against Guardian for wrongful termination, alleging that Guardian fired her for pursuing a worker's compensation claim. On February 24, 2009, Guardian filed preliminary objections and an answer with new matter. After multiple cross-claims and motions by both parties, on May 23, 2014, Guardian filed a

motion for summary judgment, which the trial court granted on July 17, 2014. Guarnieri timely appealed to the trial court. On August 18, 2014, Guarnieri timely filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and the trial court entered its opinion pursuant to Pa.R.A.P. 1925(a) on October 7, 2014.

Guarnieri raises four questions for our review:

1.      Whether the trial court determined credibility and weighed the evidence against [Guarnieri,] who was the non-moving party?

2.      Whether the trial court evaporated [*sic*] a claim for wrongful discharge based on the filing of a worker['s] compensation claim since any plaintiff would be off work due to the work[-]related injury that caused the filing for worker['s] compensation benefits; and therefore, the absence from work cannot itself allow an employer to terminate an employee who is receiving worker's compensation benefits?

3.      Whether the trial court confused a regular medical leave of absence with a leave due to a work related injury that does not have to follow the Family Medical Leave Act (FMLA) or any employer policy?

4.      Whether the trial court erroneously held the evidence in the light most favorable to [Guardian] since [Guarnieri] showed [Guardian's] Human Resource person's open hostility, [Guardian] actively fighting [Guarnieri's] worker[']s compensation claim, termination without cause just 5 months following the application for workers compensation benefits, and a judge's ruling that [Guardian] contesting [Guarnieri's] worker's compensation claim was unreasonable, which all should have allowed the causation issue to be heard by a jury?

J-A08039-15

Guarnieri's Brief at 3-4.[1]

> Our review on an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof . . . establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Murphy v. Duquesne Univ. of the Holy Ghost***, 777 A.2d 418, 429 (Pa. 2001) (citations and internal quotation marks omitted). Furthermore,

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. . . .

---

[1] Guarnieri's brief addresses three issues that do not align precisely with her statement of the questions involved. ***See*** Pa.R.A.P. 2116, 2119. We will address her issues as set forth in the argument section of her brief, and will not review any issues raised in her statement but later abandoned. ***See In re Jacobs***, 936 A.2d 1156, 1167 (Pa. Super. 2007) (holding that an issue is waived for purposes of appellate review when an appellant does not develop it in the brief).

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [her] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa.R.C.P. 1035.2. Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate [c]ourt may disturb the trial court's order only upon an error of law or an abuse of discretion.

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden.

. . . [I]t is not sufficient to persuade the appellate court that it might have reached a different conclusion if . . . charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused.

***Nat'l Cas. Co. v. Kinney***, 90 A.3d 747, 752-53 (Pa. Super. 2014) (citations and internal quotation marks omitted).

In her first issue as argued, Guarnieri asks us to determine whether it was "for the trial court to determine issue of facts [*sic*] and weigh the evidence?" Guarnieri's Brief at 9. This issue is waived.

Guarnieri has failed to develop this issue coherently. **See** Pa.R.A.P. 2119(a)-(c). Guarnieri's argument on this issue consists solely of quotations from a United States Supreme Court case observing the general standard of judicial review for summary judgment. Guarnieri's Brief at 9-10 (citing **Tolan v. Cotton**, 134 S. Ct. 1861 (2014)). She fails to identify any facts that the trial court allegedly determined or weighed, and her bald assertion of the trial court's duty is insufficient for us to review. **See Ruspi v. Glatz**, 69 A.3d 680, 689 (Pa. Super. 2013) (citing Pa.R.A.P. 2119). Accordingly, she has waived her first issue.

Second, Guarnieri contends that "[c]ausation was an issue of fact since [Guarnieri] established evidence of animus, a termination without reason, and only five months transpired between the filing of the worker['s] compensation claim and [Guarnieri's] firing[.]" Guarnieri's Brief at 10. We disagree.

> Pennsylvania courts utilize the analytical model adopted by the United States Supreme Court in **McDonnell Douglas Corp. v. Green**, 411 U.S. 792 (1973). **Fairfield Twp. Vol. Fire Co. No. 1 v. Commonwealth, Pennsylvania Human Relations Comm'n**, 609 A.2d 804, 805 (Pa. 1992). Under that model, the plaintiff bears the burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. **Bailey v. Storlazzi**, 729 A.2d 1206, 1212 (Pa. Super. 1999). . . .
>
> If plaintiff proves his or her *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory

reason for the employment action. ***Bailey***, 729 A.2d at 1212. If defendant meets this burden, then plaintiff has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but, rather, a pretext for discrimination. ***Id. See also Texas Dep't of Community Affairs v. Burdine***, 450 U.S. 248 (1981). The ultimate burden of proving intentional discrimination returns to the plaintiff even after the employer offers its legitimate, nondiscriminatory reasons for the employment action. ***Bailey***, 729 A.2d at 1212. In other words, the ultimate burden of proof remains with the plaintiff throughout the entire case.

***Campanaro v. Penn. Elec. Co.***, 738 A.2d 472, 476-77 (Pa. Super. 1999).

Guarnieri contends that causation was at issue and that she established a *prima facie* case for wrongful discharge because "she was fired because she filed a workers' compensation claim . . . [and] there was animosity towards her from Ms. Nilon and [Guardian] since they were veraciously [*sic*] fighting her workers compensation claim." Guarnieri's Brief at 13. In response, Guardian articulated a legitimate reason for terminating Guarnieri's at-will employment: upon the expiration of Guarnieri's twelve-week medical leave, Guarnieri received but failed to respond to Guardian's warnings that her medical insurance would expire and its queries as to whether she would return to work. T.C.O. at 4-5. Thus, the burden shifted back to Guarnieri "to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but, rather, a pretext . . . ." ***Campanaro***, 738 A.2d at 476-77.

Guarnieri argues that Guardian's legitimate reason for her dismissal (that she failed to respond or return to work) was a mere pretext retaliating

against her for her pursuing worker's compensation after Guardian initially denied her claim.

For a plaintiff to demonstrate pretext, the Supreme Court has articulated the following test: "She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." **Burdine**, 450 U.S. at 256. Guarnieri has failed to demonstrate a genuine issue of material fact indicating, either directly or indirectly, that Guardian's reason for her dismissal was pretextual.

First, Guarnieri herself admits that she did not contact Guardian upon notice of the pending termination of her health benefits. Nor did she seek clarification of the reasons for which she was dismissed. **See** Guarnieri Deposition, 3/31/2014, at 115-16. Thus, Guarnieri cannot show that Guardian's proffered reason for her dismissal was unworthy of credence.

Second, Guarnieri's purported evidence of retaliation fails to overcome Guardian's stated reason for dismissal. Guarnieri claims she did not know that she could be terminated "without warning or notice that [her] job was in jeopardy." Guarnieri's Brief at 13. However, the record establishes that Guarnieri acknowledged receiving her employee handbook on March 31, 2005, which stated, "I have entered into my employment relationship with [Guardian] voluntarily and acknowledge that there is no specified length of employment. Accordingly, either I or [Guardian] can terminate the relationship at will, with or without cause, at any time, so long as there is no

violation of applicable federal or state law." Employee Acknowledgement Form, 3/21/2005. The form further states: "I acknowledge that revisions to the handbook may occur, except to [Guardian's] policy of employment-at-will. . . . I understand that revised information may supersede, modify, or eliminate existing policies." *Id.* Thus, Guarnieri was responsible for knowing the information in the employee handbook and subsequent revisions.

As of October 18, 2006, Guardian revised the manual to include the following:

> Eligible employees are normally granted leave for the period of disability, up to a maximum of 12 weeks within any 12 month period. Any combination of medical leave and family leave may not exceed this maximum limit. . . .

> Employees who sustain work-related injuries are eligible for a medical leave of absence for the period of disability in accordance with all applicable laws covering occupational disabilities.

Medical Leave, Employee Manual, Effective 10/18/2006.

Critically, the manual provides as follows: "[A]n employee on medical leave is requested to provide [Guardian] with at least two weeks advance notice of the date the employee intends to return to work. . . . If an employee fails to return to work on the agreed upon return date, [Guardian] will assume that the employee has resigned." *Id.*

Guarneri concedes that she was not terminated until five months after she filed her worker's compensation claim, well beyond the twelve weeks

promised to her by Guardian. Due to Guarnieri's failure to correspond with Guardian, it was reasonable for Guardian to assume that Guarnieri had resigned. **See id.** Guarnieri's unsupported assertion that Gena Nilon had a negative attitude[2] does not overcome Guarnieri's admitted failure to respond to Guardian. Thus, Guarnieri cannot show directly or indirectly that Guardian's reason for terminating her was pretextual. **See Burdine**, 450 U.S. at 256. The trial court did not err in granting Guardian's motion for summary judgment, and because Guarnieri failed to establish a question of fact regarding causation. Accordingly, Guarnieri's second issue does not merit relief.

In her third issue, Guarnieri asks, "Is it error of law to hold that an employee can only state a wrongful discharge in violation of public policy for filing a workers compensation claim if she is currently working?" Guarnieri's Brief at 19. This issue is waived and would not merit relief.

---

[2] Specifically, Guarnieri stated in her deposition:

> Gena gave me a hard time from the day I went to file my accident report. . . . Her attitude towards me was completely changed. She didn't understand why I wanted to file an accident claim. She didn't know how to do it and she had to get help. And she was just—her attitude towards me was just very negative.

Guarnieri Deposition, 3/31/2014, at 76-77. We agree with the trial court that this illustrates, at best, a single instance of animus between Nilon and Guarnieri, and not a pattern that established that the reasons for Guarnieri's dismissal were pretextual. **See** T.C.O. at 6-7.

Preliminarily, we observe that Guarnieri has failed to support her allegation with any citations to the record or relevant case law. *See* Pa.R.A.P. 2119(a)-(c). Furthermore, her entire argument on this issue is as follows:

> It defies common sense to require an employee to be on the job working to state a wrongful termination claim for having filed a worker['s] compensation claim since by its own name that employee would be off work for having filed a worker['s] compensation claim. Surprisingly, the trial court made such a requirement, which clearly devours a claim for wrongful discharge for filing a worker['s] compensation claim. The employee who files for worker['s] compensation by essence would not be working. Therefore, the trial court erred when it made the legal finding that because [Guarnieri] was not actively working at the time of her discharge, she could not state a claim.

Guarnieri's Brief at 19.

Upon careful examination, we can find no conclusion by the trial court that Guarnieri was required "to be on the job working to state a wrongful termination claim for having filed a workers compensation claim[.]" *Id.*; *cf.* T.C.O. at 5-8. Instead, the trial court correctly concluded that Guarnieri "did not establish causation because she was terminated seven months after the alleged protected activity. Nor does [Guarnieri] rely on any evidence of a pattern of animus between the protected activity and the adverse action or on any circumstantial evidence concerning [Guardian's] motivation." T.C.O. at 7. Accordingly, even if Guarnieri had properly developed her claim, it would be contradicted immediately by the record before us. This issue would not merit relief.

- 12 -

Order affirmed.  Jurisdiction relinquished.

Judge Shogan joins the memorandum.

Judge Strassburger files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/2/2015