638 A.2d 217

**FISCH'S PARKING, INC., Vena Associates, Inc.,**

**v.**

**INDEPENDENCE HALL PARKING, INC., Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 21, 1993.

Filed Jan. 13, 1994.

Reargument Denied March 22, 1994.

264

Bruce W. Kauffman, Philadelphia, for appellant.

Jeffrey Bates, Philadelphia, for appellees.

Before BECK, TAMILIA and HESTER, JJ.

HESTER, Judge:

Don Tesauro t/a Independence Hall Parking, Inc. appeals from the October 13, 1992 judgment [1] entered by the Philadelphia Court of Common Pleas following a trial by jury. In this breach of contract action, Anthony V. Vena, the principal partner of Vena Associates, Inc, formerly known as Fisch's Parking, Inc., appellee, was awarded the sum of $135,000 plus prejudgment interest. Appellant argues that appellee was precluded from being paid a sales commission upon the sale of appellee's property due to the fact that appellant was not a licensed real estate broker. We are constrained to disagree.

Appellee instituted this action alleging that the parties entered into a Consulting Agreement (hereinafter the "agreement"), whereby appellee promised to contribute his expertise in managing parking lots in order to assist appellant in promoting the sale of a large parking lot located near Veteran's Stadium in Philadelphia (hereinafter the "property").

1. We note that appellant filed appeals from both the September 29, 1992 order denying post trial motions and the October 13, 1992 judgment, which are misidentified in the caption.

Appellant then refused to pay appellee his fee after the property was sold, claiming that appellee acted as a real estate broker without a license and was precluded from being paid due to the provisions of 63 P.S. § 455.101 *et seq.*, the Real Estate Licensing and Registration Act (hereinafter the "Act"). The trial court determined that appellee assisted in the sale but that the Act, which precludes non-real estate brokers from recovering commissions, did not apply.

The record viewed in the light most favorable to appellee as the verdict winner reveals the following. Appellant desired to sell the property. However the property was subject to easements and other restrictions which limited its attractiveness to developers. Appellant did not wish to reveal his financial records and therefore, he solicited appellee's assistance due to appellee's well-recognized expertise in parking lot management, whereby appellee could vouch for potential cash revenue from operation of the property as a parking lot to prospective purchasers. Moreover, appellant was aware that appellee had many contacts in the parking lot business. Appellant wanted to avoid paying both a broker and a consultant. However, he also wished to avoid paying appellee either a fixed fee or an hourly wage in the event a sale of the property was not consummated. Therefore, the parties agreed that appellee would receive five percent of the selling price of the property. The agreement, which was encaptioned "Consulting Agreement," was executed by both parties.

In interpreting an agreement, the court must first look to the intent of the parties. *Laub v. Laub*, 351 Pa.Super. 110, 505 A.2d 290 (1986). In *Raiken v. Mellon*, 399 Pa.Super. 192, 198, 582 A.2d 11, 13 (1990), we stated:

When the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement. [*Laub v. Laub*, 351 Pa.Super. 110, 505 A.2d 290 (1986) ], *citing Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982).

Where ambiguity exists, however, the courts are free to construe the terms against the drafter and to consider

extrinsic evidence in so doing. *Rusiski v. Pribonic*, 511 Pa. 383, 515 A.2d 507 (1986).

Instantly, the agreement was entitled "Consulting Agreement," yet it required appellee to assist appellant in promoting the sale of the property and locating prospective buyers. We conclude that there is an inherent ambiguity in the language of the agreement. Therefore, we find the intent of the parties properly was explored through evidence extrinsic to the agreement. *Rusiski v. Pribonic, supra.*

Appellant regarded the agreement as an exclusive sales listing agreement of limited duration. He asserts appellee never informed him that he did not possess a real estate broker's license, yet the agreement required him to assist in promoting the sale of the property. Moreover, appellant claims it is incredible that he would need consulting services from appellee concerning how to paint parking place stripes, regulate the flow of cars, or the types of signs since appellant had operated parking lots for decades. Appellant essentially asserts that he received nothing of value from appellee's consulting services in that appellee did not provide valuable advice, produce a suitable buyer, or aid in any manner in the sale of the property. Finally, appellant contends that the agreement was terminated. First, he testified that he informed appellee that "It was long enough ... and that our deal is off," and appellee said, "don't worry about it." Notes of Testimony ("N.T."), 5/4/92, at 2.711. He further testified appellee, "never told me to send him a letter. He said, "don't worry about it. Forget it." *Id.* Second, the agreement, by its own terms, was to remain in effect for 180 days until terminated by the parties after 180 days had elapsed.

Appellee contends that he provided valuable consulting advice under the agreement in connection with analyzing the customer base, vehicle flow, placement and type of signs, parking lot security, and cash management to improve revenues. He maintains that he assisted in creating the parking lot management lease which ultimately was utilized by the purchaser, Dr. Richard Salkind, to obtain revenue by subcontracting the operation of the property as a parking lot from

the time Dr. Salkind bought the property until he could make alternate arrangements. Appellant also received a commission under that leasing agreement. Nevertheless, appellee claims his advice was of value in the sale to Dr. Salkind since Dr. Salkind might not have purchased the property without assurance of achieving a positive cash flow by leasing its operation. Appellant also testified that although appellant indicated he wished to cancel the agreement, appellee asked him to send a cancelation letter. N.T., 5/1/92, at 106.

While acknowledging that a significant portion of his task was to find and introduce potential buyers, appellee denied that his commission was tied in any fashion solely to producing a suitable buyer. He claims he contributed a great deal of time and effort to this project to the exclusion of his own business. He notes that he did not represent himself to be a real estate broker, and he specifically informed appellant he was not licensed as real estate broker. Appellee further asserts that appellant encouraged him to continue to perform even after the agreement of sale had been signed, and that appellant did not terminate the agreement in writing as required by the agreement. Appellee also argues that appellant always was represented by an attorney, and this agreement was a consulting arrangement and not a disguised broker's agreement. The jury credited appellee's version of the facts, and this appeal followed.

Appellant contends that he is entitled to a judgment notwithstanding the verdict due to the fact that the court erred in not applying the Act to bar appellee from recovering commissions. Our standard of review for an appeal from a judgment notwithstanding the verdict is clear. In *Olson v. Dietz,* 347 Pa.Super. 1, 10, 500 A.2d 125, 129 (1985), we stated:

> A judgment notwithstanding the verdict may be entered only in a clear case, *Sperrazza v. Cambridge Mutual Fire Insurance Company,* 313 Pa.Super. 60, 459 A.2d 409 (1983), and is proper only where the facts are such that no two reasonable persons could fail to agree that the verdict is improper. *Buck v. Scott Township,* 325 Pa.Super. 148, 472 A.2d 691 (1984). Judgment n.o.v. should not be entered in

cases where the evidence is conflicting upon a material fact. *Burg v. Aberman*, 183 Pa.Super. 1, 128 A.2d 179 (1956). In considering such a motion, a reviewing court is required to consider the evidence, together with all reasonable inferences therefrom, in the light most favorable to the verdict winner. *Claytor v. Durham*, 273 Pa.Super. 571, 417 A.2d 1196 (1980).

Initially, we note that whether the Act applies is a question of law. *See Golibart v. Reamer*, 415 Pa.Super. 623, 610 A.2d 56 (1992) (seller of shares in a real estate development project was barred from recovery without a real estate license by the Act as a matter of law). Appellant contends the facts in this case make it clear that appellee was involved principally in promoting the sale of land. He asserts that the fact that appellee also held himself out as a consultant and provided advice regarding parking revenues does not alter the fact that he promoted the sale of real estate which has been held to be encompassed by the Act since we have construed it broadly. *Id.* (fee earned for any act assisting in bringing parties together in a real estate transaction implicates the Act). Appellant further asserts that no two reasonable minds could differ that appellee's employment in this case was to find prospective buyers and "the mere introduction of two willing parties comes within the purview of the statute." *Harrison v. Soffer*, 221 Pa.Super. 275, 282, 289 A.2d 752, 756 (1972). Moreover, he asserts that the Act does not require that one hold oneself out as a broker for the Act to apply. *Burke v. Israel*, 264 Pa.Super. 286, 399 A.2d 779 (1979). Hence, appellant contends the Act clearly applies and requires appellee to be licensed to be entitled to payment. We disagree.

■ Initially we note that 63 P.S. § 455.201, which defines acts which constitute acting as a real estate broker, provides:

*"Broker"* Any person who, for another and for a fee, commission or other valuable consideration:

(1) negotiates with or aids any person in locating or obtaining for purchase, lease or acquisition of interest in any real estate;

(2) negotiates the listing, sale, purchase, exchange, lease, time share and similarly designated interests, financing or option for any real estate;

(3) manages or appraises any real estate;

(4) represents himself as real estate consultant, counsellor, house finder;

(5) undertakes to promote the sale, exchange, purchase or rental of real estate: Provided, however, That this provision shall not include any person whose main business is that of advertising, promotion or public relations; or

(6) attempts to perform any of the above acts.

The record viewed in the light most favorable to the verdict winner reveals no evidence that appellee ever held himself out as a real estate broker on behalf of appellant as required by 63 P.S. § 455.201(4). He specifically informed appellant that he was not licensed as a real estate broker and did not give advice regarding the suitability of the property or the price, but confined himself to communicating information between the parties. Similarly, section 455.201(3) is not relevant.

Further, we find that 63 P.S. §§ 455.201(1) and (2) do not apply since appellee did not engage in negotiations regarding the sale. The agreement entitled appellee to payment of a fee if the sale were consummated, but was not dependent upon whether appellee produced a suitable buyer, as most real estate broker's commissions are normally structured. *See Axilbund v. McAllister,* 407 Pa. 46, 180 A.2d 244 (1962) (a non-exclusive real estate broker was entitled to a commission where he produced a willing and able buyer pursuant to his contract with the seller before being notified a sale already had occurred). Instantly, appellee had no contact whatsoever with Dr. Salkind until after the agreement of sale was executed. His commission was not tied to producing a buyer, but rather, payment for his services was contingent on a sale without any other restrictions. Thus, we agree with the trial court that appellee's commission was not tied to negotiating a sale as required for the application of 63 P.S. §§ 455.201(1) and (2).

We further conclude that section 455.201(5) of the Act also does not apply, since appellee specifically was retained for his expertise in managing parking lot operations, a skill which would not be shared by most real estate brokers. *See General Aggregate Corp. v. LaBrayere*, 666 S.W.2d 901 (Mo.App.1984) (fee for a geological expert retained to assist novice in purchase of a quarry operation was not precluded by prohibition of commissions to an unlicensed real estate broker). In the instant case, appellee was a consultant encouraged to locate buyers and help promote the sale of the property as part of his consulting services. We do not agree that the fact that he endeavored to find buyers automatically implicates the Act when other services are involved, even though we construe the Act more broadly than does Missouri. Although a sale might not occur without some information about the cash revenue from the parking business, his commission was not contingent on obtaining a suitable buyer, but was tied to the occurrence of a sale.

Contrary to appellant's argument, we attach importance to the fact that the parties labeled the agreement as a consulting agreement. All of the cases cited by appellant in which we opined that the Act extended to promoting a purchase or sale of a business also involving land, provided that the prospective commission expressly was made contingent on finding a suitable buyer. None involved providing other distinct services such as consulting. Moreover, the agreement provided that appellee was entitled to be paid for his services, if a sale occurred. There were no other restrictions. On this basis we believe the cases cited by appellant applying the Act to the sale of land and which also included providing other services, are distinguishable and not applicable. *See Brown v. Kleinfelter*, 267 Pa.Super. 144, 406 A.2d 560 (1979) (sale of a business accompanied with the sale of land); *Burke v. Israel*, 264 Pa.Super. 286, 399 A.2d 779 (1979) (sale of coal and land); *Burns v. Gartzman*, 139 Pa.Super. 453, 11 A.2d 708 (1940) (sale of a restaurant and the land on which it stood). Consequently, we are not persuaded that the instant case is a situation in which no two minds could differ that the consult-

ing agreement was a broker's agreement in disguise. Thus, we reject appellant's assertion that the trial court erred in denying him judgment notwithstanding the verdict through application of the Act.

Next, appellant argues that he is entitled to judgment notwithstanding the verdict since appellee produced no evidence that he was the procuring cause of the sale which would entitle him to a commission. Since we previously determined that the trial court correctly found that appellee's commission flowed from his consulting services which were made contingent on the sale, and not for procuring a suitable buyer, this argument clearly is inapposite.

Appellant next argues appellee waived or was estopped from claiming payment of his commission since he failed to appear at the closing. Appellant relies upon *Wilson v. Franklin*, 282 Pa. 189, 127 A. 609 (1925), where we opined that a broker cannot recover where he failed to notify the seller of his claim to a commission by producing a suitable buyer prior to closing although he had ample time to do so, and the seller paid a commission to another broker, and *Doppler v. Doppler*, 393 Pa.Super. 600, 574 A.2d 1101 (1990) (claimant equitably estopped from enforcing a partition agreement where he failed to make a claim at closing and attempted to assert his claim twenty years later).

We find these cases do not apply since the testimony establishes that appellee notified appellant of his claim. Appellee also requested the date of closing from appellant, but appellant deliberately did not inform appellee about the correct date of the closing until after it occurred. Appellee made his claim in writing, and we find no requirement that he must personally attend the closing in order for his claim to be valid. Further, the fact that appellee's fee was made contingent upon a sale does not necessarily mean that it is an item which must be included in the closing as a possible lien and may not be settled independently between the owner and the consultant. Accordingly, we conclude appellant had not demonstrated that

he is entitled to a judgment notwithstanding the verdict through waiver or estoppel.

Appellant's last two arguments relate to jury instructions. He first argues that he is entitled to a new trial alleging that the trial court's instructions to the jury were inadequate. Our standard of review for claims that a jury instruction legally is inadequate is clear. In *N.C. Quandel Co. v. Slough Flooring*, 384 Pa.Super. 236, 240, 558 A.2d 99, 101 (1989), we stated:

> When a challenge is made as to the sufficiency of a charge to the jury, our function as an appellate court is to examine the charge in its entirety against the background of the evidence to determine whether error has been made which prejudices the complaining party. Unless we conclude that the charge as a whole was erroneous and may have prejudiced the appellant, we will not reverse for isolated inaccuracies. In making such a determination, we are careful to construe the offending portions in their proper context.

Appellant asserts that the jury instructions were inadequate and that the trial court erred in not submitting several critical factual issues to the jury. Instantly, he contends that the trial court improperly refused to instruct the jury that appellee was precluded from recovering if it found that: (1) the consulting agreement did not constitute an exclusive listing agreement, and without an exclusive arrangement, appellee could not recover since he neither assisted in procuring nor convinced Dr. Salkind to purchase the property; and (2) appellee waived his claim since he did not attend the closing. Without such instructions, appellant posits that the jury made its decision without critical guidance on relevant legal principles.

We find the trial court did not err. First, the issues regarding whether the agreement constituted an exclusive listing agreement and whether appellee found or convinced Dr. Salkind to purchase the property, were rendered irrelevant once the trial court determined that the consulting agreement entitled appellant to recover whether or not he procured Dr. Salkind. Similarly, we also previously found that the trial court correctly decided that appellee's failure to appear per-

sonally at the closing did not bar his claim. Consequently, there was no need to instruct the jury regarding these issues.

■ Finally, appellant argues that trial court erred in giving the jury a misleading and confusing verdict sheet. Appellant contends the verdict sheet precluded the jury from addressing the issue of whether the agreement was understood by the parties to be terminated when appellant notified appellee orally that he wished to cancel the agreement. Further, he asserts the verdict sheet avoided forcing the jury to decide whether the agreement expired on its own terms. Instead, the verdict sheet asked the jury to decide only: "Do you find that a consulting fee agreement existed between plaintiff and defendant?" This one question, appellant argues, misled and confused the jury since the parties agreed the contract had been formed and the issue instead was whether the agreement had been terminated. We do not agree.

■ Appellant is not entitled by right to special findings of fact. In *Century 21 Heritage Realty v. Bair*, 386 Pa.Super. 373, 378, 563 A.2d 114, 116 (1989), we stated:

Generally, a trial judge in Pennsylvania may grant or refuse a request for special findings on the basis of whether such would add to the logical and reasonable understanding of the issue. We will not disturb a trial judge's decision to grant or refuse the request absent an abuse of discretion. *Willinger v. Mercy Catholic Medical Center*, 482 Pa. 441, 445–56 n. 4, 393 A.2d 1188, 1190 n. 4 (1978); *Krock v. Chroust*, 330 Pa.Super. 108, 478 A.2d 1376 (1984); *Walsh v. Pennsylvania Gas & Water Co.*, 303 Pa.Super. 52, 449 A.2d 573 (1982).

Furthermore, we agree with the trial court that the various issues and arguments regarding when and how the consulting agreement would be terminated were set forth clearly in the court's instructions. The jury was informed, *inter alia*, that:

A contract may be terminated by the expiration of a reasonable time, by the expressed terms of the contract or by express or implied agreement of the parties. If you find that the contract was terminated by any of these methods,

then you should find in favor of the Defendant. On the other hand, if you find that the contract was not terminated, then you know you should find in favor of the Plaintiff.

A contract can terminate if it is not performed within a reasonable time. If you find that the property or the business was not sold after a reasonable amount of time had elapsed, then you should find for the Defendant. Otherwise, you should find for the Plaintiff.

Members of the jury, Mr. Vena contends that the contract between he and [appellant] was the written agreement that you've seen on the easel. If you find that the agreement was the contract between the parties, you may also look to the terms of that agreement to determine whether or not a contract was terminated. The agreement provides that the agreement may be terminated upon [thirty days] written notice. That provision, however, may be waived by the actions of the parties.

If you find that the agreement between the parties was the agreement that you've seen on the easel, and if you find that the written notice to terminate was waived and that the parties did terminate the agreement, then you should find in favor of the Defendant. On the other hand, if you find that the agreement was not terminated, then your verdict should be in favor of the Plaintiff.

The above instruction presented the jury with all of the considerations to determine whether the agreement was terminated. Obviously, if it were terminated, the agreement would no longer be in existence, and the jury would not have found in favor of appellee. These instructions were complete, guided the jury's deliberations very clearly, and there was no need for special findings on these issues.

Judgment affirmed.