**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MCNAMEE REAL ESTATE ADVISORS, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 671 EDA 2025 |
| HAVERFORD PROPERTIES, INC., | : | |
| BULIGO CAPITAL PARTNERS, INC., | : | |
| SAMUEL HAMILTON, CHARLES D. | : | |
| HOUDER, HP BC EAGLE ONE, LLC, | : | |
| PDC-OLD EAGLE, LLC, AND JOSEPH | : | |
| R. STAUGAARD | : | |

Appeal from the Order Entered January 22, 2025
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2023-27570

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED MARCH 5, 2026**

McNamee Real Estate Advisors, LLC ("McNamee") appeals from the order, entered in the Court of Common Pleas of Montgomery County, sustaining preliminary objections filed by Appellees Haverford Properties, Inc., Buligo Capital Partners, Inc., Samuel Hamilton, Charles D. Houder, HP BC Eagle One, LLC, PDC-Old Eagle, LLC, and Joseph R. Staugaard and dismissing McNamee's amended complaint with prejudice. Upon review, we affirm.

McNamee initiated this action by filing a complaint on August 26, 2024, asserting a single claim for breach of contract against Haverford Properties, Inc., HP BC Eagle One, LLC, and related principals (collectively, "Haverford"),

seeking compensation as a result of the sale of a subject property ("Property"). Haverford filed preliminary objections in September 2024, based on McNamee's failure to allege or produce a valid contract. McNamee filed an amended complaint on October 17, 2024, asserting both unjust enrichment and breach of contract claims and seeking "payment of a real estate commission, fee, and/or other compensation." Amended Complaint, 10/17/24, at ¶ 1.

In the amended complaint, McNamee identified itself as a duly licensed "real estate brokerage company" that provides "various state[-]regulated real estate brokerage services as well as business and investment strategies and advice, while acting in an '[a]dvisory [c]apacity.'" *Id.* at ¶¶ 3, 4. McNamee classified Haverford as a real estate developer and investment firm which utilizes various holding companies to conduct its business. *Id.* at ¶¶ 7, 8, 10.

According to McNamee, Haverford, by and through its principals, engaged McNamee in June 2017 for "real estate advisory services," with a plan for McNamee to become engaged as a buyer's agent if it located an appropriate property for Haverford to acquire. *Id.* at ¶¶ 18–20. McNamee alleged that its "initial services were to gain advantage for [Haverford] in growing its property acquisition pipeline and to do market research as to suitable properties that Plaintiff would then recommend [] in an advisory capacity." *Id.* at ¶ 21. Haverford "was aware of the Plaintiff [McNamee] being a respected and well[-]known real estate brokerage firm performing professional agency services under the known, established[,] and customary

open and non-exclusive agency terms[,] including compensation of 6% of the purchase price payable." *Id.* at ¶ 22.

McNamee represented that the parties "made an oral agreement with shaking of their hands" for Haverford to engage McNamee as an advisor and, if a suitable property was located, as a broker, finder, or agent. *Id.* at ¶ 23. This oral agreement, which McNamee alleged was later reduced to writing in a series of email and text messages attached to its complaint, comprised what McNamee identified as two distinct agreements. *Id.* at ¶¶ 23, 24, 28. McNamee labeled the first agreement, identified as the basis for the unjust enrichment claim, the "Advisory Agreement," under which McNamee was "an investment adviser and exempt under registration and licensure requirement[s] for the services requested and agreed to as well as understood and/or implied under standard terms and conditions for advisory services."[1] *Id.* at ¶ 26. The second agreement, which the trial court designated the "Brokerage Services Agreement," formed the basis for McNamee's breach of contract claim. *Id.* at ¶ 27. McNamee asserted that the attached communications, taken together, allowed the Brokerage Services Agreement to meet RELRA's requirements. *Id.* at ¶ 27–28.

Samuel Hamilton, one of Haverford's principals, reportedly assured McNamee that no written agreement was necessary, as professional services

---

[1] The trial court observed that McNamee simultaneously represents the Advisory Agreement both is and is not subject to requirements of the Real Estate Licensing and Registration Act ("RELRA"). *See* Trial Court Opinion, 4/1/25, at 2 n.9.

- 3 -

were "limited to first serving in an advisory capacity for standard fees and that for brokerage services for a term of one year." *Id.* at ¶ 25. McNamee understood that "confirmation of the engagement would be done by email without need to have lengthy advisory and/or agency agreements," as all parties were familiar with RELRA. *Id.* McNamee represented that "[i]t was anticipated, customary, and understood that [McNamee]'s professional advisory services would be included in a brokerage commission if [Haverford] paid [McNamee] a brokerage commission." *Id.* at ¶ 38.

Under the Advisory Agreement, McNamee claimed it could recover compensation for professional advisory services "under the standard terms and conditions for such services" on an unjust enrichment theory. *Id.* at ¶ 31. Specifically, it identified the services it provided as having "advised [Haverford] and Participants of the investment Property availability, the special opportunity, the appropriateness of the Property to meet [its] investment needs[,] and the likelihood of a significant return" on its investment. *Id.* at ¶ 32. It asserted that Haverford purchased the Property "under the business arrangement described above," and McNamee was therefore entitled to a fee. *Id.* at ¶¶ 33–35.

McNamee's breach of contract claim alleged McNamee performed brokerage services under the Brokerage Services Agreement, and Haverford was required to pay a brokerage fee. *Id.* at ¶¶ 40–43. The services McNamee allegedly provided under this Agreement were "(1) perform[ing] its [b]rokerage [s]ervices . . . , (2) act[ing] as buy-side broker, finder, or agent,

and (3) successfully sourc[ing] the subject Property for the benefit of Defendant Haverford[.]" *Id.* at ¶ 41.  McNamee claimed Haverford "had a duty and obligation to pay Plaintiff [McNamee] the customary, understood[,] and accepted [c]ompensation in the amount of six (6%) percent of the purchase price at the time of their purchase." *Id.* at ¶ 42.

Haverford filed preliminary objections to the amended complaint on November 4, 2024, which the trial court sustained on January 22, 2025, dismissing the case with prejudice.[2]  McNamee filed a timely notice of appeal and concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

McNamee advanced ten claims in its Rule 1925(b) statement[3] but presents only one issue in its brief:  "Whether the [t]rial [c]ourt committed

---

[2] McNamee filed a motion for reconsideration on January 31, 2025, upon which the trial court did not rule.

[3] McNamee's Rule 1925(b) statement included the following errors complained of on appeal:

> (1) [The trial court] abused its discretion and erred as a matter of law and fact in finding or not finding on issues occurring or raised during the review of [Haverford's] preliminary objections, [McNamee]'s response thereto and supporting memorandum.

> (2) The [trial court] granted the order sustaining [Haverford's] preliminary objections dismissing [McNamee]'s amended complaint with prejudice (1) without any decision being written as to the legal reasoning why both counts of [McNamee]'s amended complaint were dismissed with prejudice, and (2) without granting

*(Footnote Continued Next Page)*

_____

[McNamee] the right to file a further amended complaint to satisfy the pleading deficiencies determined by the [trial court].

(3) The [trial court] did not write an opinion as to the reason(s) for granting [Haverford's] preliminary objections and therefore the reasons for the trial court's ruling are vague or not discernable from the record, and therefore [McNamee] is unable to adequately set forth a concise statement of the matters complained of on appeal.

(4) [Haverford] argued in their preliminary objections that [McNamee] failed to plead that it had a written buyer agency agreement as required under [RELRA]. Whereas, [McNamee] argued in its reply to the preliminary objections and in its memoranda of law, that advisory services are not regulated by RELRA and therefore no written engagement agreement is required for the collection of compensation under the legal claim of unjust enrichment.

(5) [Haverford] set forth facts not of record in their preliminary objections and with the bare order sustaining the preliminary objections, [McNamee] is unable to ascertain if the Court's order was based upon facts asserted by [Haverford] through an improper "[s]peaking [d]emurrer."

(6) Count One of [McNamee]'s amended complaint seeks recovery of compensation for advisory services pursuant to a claim of unjust enrichment based upon an oral and implied agreement for professional services (1) that were measurably solicited and engaged by [Haverford], (2) that were measurably performed and completed by [McNamee] for the benefit of [Haverford], (3) that were measurably encouraged, received and ratified by [Haverford], and (4) that were measurably beneficial and instrumental in [Haverford's] analysis, negotiations, and purchase[] of the subject property for $60,800,000.00 and despite [McNamee] demand, [Haverford] failed to pay [McNamee] for its professional services.

(7) Count Two of [McNamee]'s amended complaint seeks recovery, in the alternative to collection of an advisory fee, under breach of contract for compensation earned based upon RELRA section 455.606a(b)(2) allowing a written memorandum to be

*(Footnote Continued Next Page)*

- 6 -

legal error by dismissing an unjust enrichment claim at the pleading stage, where the question of whether the alleged services fell outside the regulatory scope of RELRA presents triable issues of fact." Appellant's Brief, at 1.[4]

_____

> sufficient to satisfy the requirement of a written buyer agency agreement. [McNamee] argues in its reply and memorandum of law that a series of email communications, oral discussions, and professional brokerage services provided to [Haverford] was sufficient to satisfy the writing requirement under RELRA.
>
> (8) Without allowing [McNamee] to proceed under either or both of these theories of law, [Haverford has] avoided responding as to the allegations that (1) [McNamee] was solicited and engaged to provide professional services, (2) the requested services were provided complete[ly] by [McNamee], (3) the benefits were received by [Haverford], and (4) that [Haverford] refused to compensate [McNamee] for those requested and performed professional services. It is [McNamee]'s educated guess that [the trial court] determined that no sufficient memorandum of a buyer agency agreement or entitlement to advisory fees were set forth in [McNamee]'s amended complaint.
>
> (9) [McNamee] timely submitted a motion for reconsideration of the [trial court]'s order and requested a written decision to determine the merits of an appeal, however the motion was not acted upon by the [trial court] by the date necessary for [McNamee] to file its appeal. [McNamee] reserves the right to supplement this statement upon receipt and review of the opinion and record the Court submits to the Superior Court.

Pa.R.A.P. 1925(b) Statement, 3/6/25, at 1–4 (unpaginated) (claims renumbered; unnecessary capitalization, quotation marks, and citations omitted).

[4] Haverford argues McNamee waived six of the seven issues discussed in its argument section because the arguments in its appellate brief were "not remotely implied" by the single issue as stated. Appellee's Brief, at 12. It notes that Pa.R.A.P. 2119 requires the argument "be divided into as many parts as there are questions to be argued; and shall have at the head of each part [] the particular point treated therein, followed by such discussion and

*(Footnote Continued Next Page)*

- 7 -

Though McNamee appealed the dismissal of both its breach of contract and unjust enrichment causes of action, in its brief it abandons the breach of contract claim and addresses only unjust enrichment.

_____

citation of authorities as are deemed pertinent." **Id.** at 11–12 (citing **Krebs v. United Refining Co. of Pa.**, 893 A.2d 776, 797 (Pa. Super. 2006)). In its reply brief, McNamee argues that the sole question presented fairly comprises each remaining section of the brief "because each is an element of, or necessary predicate to," that issue. Reply Brief, at 6. We agree with McNamee that most of the subsections are at least suggested by its question presented, and the headings help clarify McNamee's argument. While several subsections are a bit further afield, we find that McNamee's nonconformance with Rule 2119 does not impede our appellate review. **See, e.g.**, **Commonwealth v. Verma**, 334 A.3d 941, 946 n.4 (Pa. Super. 2025). As such, we decline to find waiver on this basis.

While not raised by Haverford, we also consider whether McNamee's single question was fairly suggested by its lengthy Rule 1925(b) statement, which does not raise the question in the exact form McNamee presents in its brief. It is well-settled that issues not raised in a Rule 1925(b) statement are waived. **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998). In this instance, the sole question in McNamee's brief—whether the services it performed fell outside RELRA's scope and may therefore be the subject of an unjust enrichment claim (an argument preserved in McNamee's briefing at the preliminary objection stage, **see** Memorandum of Law Contra to Defendants' Preliminary Objections to Plaintiff's Amended Complaint, 12/5/24, at 5–6)—is not stated in so many words in its Rule 1925(b) statement. We find, however, that it is reasonably suggested by issues (4), (6), and (8). Thus, we decline to find waiver on the unjust enrichment issue.

McNamee's argument in the alternative, that it should have been given the opportunity to again amend the amended complaint before the action was dismissed with prejudice, is fairly suggested by issue 2 of its Rule 1925(b) statement. Though it is not directly stated in McNamee's single question presented in its brief, the trial court extensively explained its reasons for dismissing the claim with prejudice. Because the trial court's reasoning is clear, we again decline to find waiver and proceed to the merits of McNamee's claim.

McNamee argues that the trial court erred in dismissing its unjust enrichment count at the demurrer stage, precluding it from proving that the Advisory Agreement was separate and distinct from the Brokerage Agreement. Had it been able to prove that it acted in a discrete advisory role, McNamee asserts, it was entitled to relief even though it could not recover on the RELRA-governed brokerage agreement, because the Advisory Agreement fell outside RELRA's scope and therefore was not required to be in writing.[5] *Id.* at 5–6. Relying on ***Fisch's Parking, Inc. v. Indep. Hall Parking, Inc.***, 638 A.2d 217 (Pa. Super. 1994), McNamee claims that a consulting agreement is distinct from a RELRA-governed brokerage agreement and, therefore, it should be able to recover in equity for its advisory services. *Id.* at 5–6. Finally, McNamee asserts that ***Durst v. Milroy General Contracting, Inc.***, 52 A.3d 357 (Pa. Super. 2012), holds that equitable remedies are not extinguished by statutes requiring written agreements, where the statute governing the agreement does not explicitly preclude recovery in equity. *Id.* at 8–9.

Haverford, in contrast, counters that RELRA clearly precludes a licensed broker from obtaining payment for what is, in essence, a commission, by

---

[5] McNamee, LLC, distinguishes itself from its principal, Bernard McNamee, by claiming that Mr. McNamee is a licensed broker who does not prevent McNamee, LLC, from performing services that fall outside the realm of brokerage services. *See* Appellant's Brief, at 5. In its brief, Haverford notes that Mr. McNamee is not a party, and further, both Mr. McNamee and McNamee, LLC, are licensees and therefore equally subject to RELRA's requirements. *See* Appellee's Brief, at 14–15.

repackaging its claim as one sounding in equity, and that a licensee cannot recover by calling what is clearly a commission payment by another name. *See* Appellee's Brief, at 13–14. Haverford also objects to McNamee's reliance on *Fisch's Parking* to distinguish between consulting and brokerage services, pointing out that the plaintiff in *Fisch's Parking* was not a licensee, had a written agreement with the defendant, and had specialized expertise in the operation of parking garages. By contrast, here, McNamee is a licensee with no written agreement and claims no expertise beyond real estate investment. *Id.* at 14–16. Thus, Haverford argues, McNamee cannot recover on its unjust enrichment claim.

Our standard of review of an order sustaining preliminary objections is clear:

> When an appellate court rules on whether preliminary objections in the nature of a demurrer were properly sustained, the standard of review is de novo and the scope of review is plenary. The court may sustain preliminary objections only when, based on the facts pleaded, it is clear and free from doubt that the complainant will be unable to prove facts legally sufficient to establish a right to relief. For the purpose of evaluating the legal sufficiency of the challenged pleading, the court must accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts.

*Gustafson v. Springfield, Inc.*, 333 A.3d 651, 662 (Pa. 2025) (quoting *Mazur v. Trinity Area Sch. Dist.*, 961 A.2d 96, 101 (Pa. 2008)).

RELRA "establishes specific standards of conduct and licensing which pertain to all persons engaged in the sale or transfer of real property within this Commonwealth." *Meyer v. Gwynedd Dev. Grp., Inc.*, 756 A.2d 67, 69

(Pa. Super. 2000). Subsection 455.606(b)(1) of RELRA requires that material terms of agreements between covered parties be specified in a written contract:

> A licensee may not perform a service for a consumer of real estate services for a fee, commission[,] or other valuable consideration paid by or on behalf of the consumer unless the nature of the service and the fee to be charged are set forth in a written agreement **between the broker and the consumer** that is signed by the consumer. This paragraph shall not prohibit a licensee from performing services before such an agreement is signed, but the licensee is not entitled to recover a fee, commission[,] or other valuable consideration in the absence of such a signed agreement.

63 P.S. § 455.606a(b)(1) (emphasis added);[6] *see Michael Salove Co. v. Enrico Partners, L.P.*, 23 A.3d 1066, 1070 (Pa. Super. 2011). Under RELRA, a "broker" is defined, in relevant part, as

> (1) Any person who, for another and for a fee, commission[,] or other valuable consideration:
>
>> (i) negotiates with or aids any person in locating or obtaining for purchase, lease[,] or an acquisition of interest in any real estate;
>>
>> (ii) negotiates the listing, sale, purchase, exchange, lease, time share and similarly designated interests, financing[,] or option for any real estate;

---

[6] Section 455.608a of RELRA dictates the information that must be set forth in a written agreement. **See also** Trial Court Opinion, 4/1/25, at 6–7. As the trial court notes, none of the electronic communications McNamee attaches to the amended complaint address these terms. **Id.** at 8 ("The communications do not describe the terms or the nature and extent of Plaintiff's advisory and/or brokerage services, the duration of the agreements, or any description of a commission fee.").

- 11 -

> > (iii)     manages any real estate;
> >
> > (iv)     represents himself to be a real estate consultant, counsellor, agent[,] or finder;
> >
> > (v)     undertakes to promote the sale, exchange, purchase[,] or rental of real estate:  Provided, however, That this provision shall not include any person whose main business is that of advertising, promotion[,] or public relations;
> >
> > (vi)     undertakes to perform a comparative market analysis; or
> >
> > (vii)     attempts to perform any of the above acts.

63 P.S. § 455.201 (definitions).[7]

The statute's definition of a broker is expansive by design.  As our Supreme Court has recognized, the plain language of the statute "indicates the General Assembly intended RELRA to apply broadly, not just to buying and selling, but to all real estate transactions as they existed" at the time it was enacted.  ***Ladd v. Real Est. Comm'n***, 230 A.3d 1096, 1111 (Pa. 2020).  This explicitly includes licensees who are acting as "consultants," in addition to those directly negotiating the purchase and sale of real estate.  ***See*** 63 P.S. § 455.201 ("Broker") (1)(iv).

In the amended complaint, McNamee alleges it entered into a RELRA-compliant written agreement with Haverford, citing and attaching email and text messages purporting to memorialize an agreement.  ***See*** Amended Complaint, 10/17/24, at ¶¶ 27–28, Exhibit "A."  Based on this agreement,

---

[7] Haverford indisputably also meets the definition of consumers.  ***See*** 63 P.S. § 455.201 (definitions) ("'Consumer.'  A person who is the recipient of any real estate service.").

- 12 -

which McNamee characterized as a written memorandum of the Advisory and Brokerage Services Agreements, it sought recovery on unjust enrichment and breach of contract theories. On appeal, McNamee abandons its breach of contract claim, acknowledging there was no written agreement that satisfied RELRA's terms. Instead, it argues that its amended complaint presents a valid claim for unjust enrichment under the "Advisory Agreement," which is excludable from RELRA requirements and, therefore, permits McNamee to recover a fee.

McNamee's theory fails for two reasons. First, regardless of what McNamee calls the services it offered to Haverford, it clearly acted as Haverford's broker without entering into a written agreement, signed by Haverford, as required by RELRA, and the payment it seeks is unmistakably a commission.[8] McNamee's description of the services it provided to Haverford—advising Haverford "of the investment Property availability, the special opportunity, the appropriateness of the Property to meet [its] investment needs and the likelihood of a significant return on the investment

_____

[8] The trial court notes that Exhibit "B" to the amended complaint, which McNamee never references, includes a commission agreement executed and signed by McNamee and the seller of the Property, PDC Wayne Partners ("Investor"). *See* Trial Court Opinion, 4/1/25, at 9 n.11. This agreement indicates that "Broker" (McNamee) "rendered real estate services to, and at the request of," Investor, in the form of introducing Haverford to Investor, and for those services, Investor will "pay Broker a real estate commission upon the successful completion, at closing," of the sale, partial sale, or capital investment of the Property. Amended Complaint, 10/17/24, at Exhibit "B" pp. 2–3. It further dictates that Broker "will receive no compensation other than what is contemplated herein regarding the Property and Investor and Haverford." *Id.* at p. 3.

of the Property"—falls squarely within RELRA's definition of services offered by a broker:  one who, *inter alia*, "**negotiates with or aids any person in locating or obtaining**" real estate, "represents himself **to be a real estate consultant [or] counsellor**," or "undertakes to **promote the sale, exchange, purchase[,] or rental of real estate**."  63 P.S. § 455.201 (emphasis added).  As such, McNamee's attempt to reframe its claim as one for unjust enrichment rather than breach of contract, and to reclassify a commission as an unspecified "fee," cannot be sustained.[9, 10]

_____

[9] McNamee's reliance on **Fisch's Parking** to distinguish its role as advisor from that of broker is misplaced.  In **Fisch's Parking,** where this Court found the plaintiff was a consultant rather than a broker, the parties specifically labeled their agreement as a consulting agreement, and we noted that the agreement identified distinct consulting services and entitled the plaintiff to payment upon any sale of the property, rather than making it contingent on plaintiff finding the buyer.  **Fisch's Parking**, 638 A.2d at 221.  The "consultant" in that case was not a licensed broker and had unique and relevant expertise in the management of parking garages.  **See id.** at 219, 221-22.  This Court concluded that "we are not persuaded that the instant case is a situation in which no two minds could differ that the consulting agreement was a broker's agreement in disguise."  **Id.** at 222.

Not so here.  McNamee, a licensed broker whose principal is also a licensed broker, claims it was engaged by Haverford to locate a property for purchase.  **See** Amended Complaint, 10/17/24, at ¶ 20.  Under the alleged agreement, if McNamee were to locate a property, it would be engaged as the buyer-defendant's broker for the property acquisition, with payment determined by standard brokerage fees.  **Id.** at ¶¶ 20, 22, 25.  McNamee's protestations to the contrary are unavailing.

[10] In its reply brief, McNamee argues, for the first time on appeal, that "underlying this entire case is erroneous statutory construction," citing **Shafer Elec. & Const. v. Mantia**, 96 A.3d 989, 996 (Pa. 2014), to claim that when an operative statute is self-contradictory, dismissal on the merits is improper.
*(Footnote Continued Next Page)*

- 14 -

This Court rejected McNamee's theory in **North Broad Assocs., LLC v. Stockton Real Est. Advisors, LLC**, 2024 WL 2991902 (Pa. Super. filed June 14, 2024) (unpublished memorandum decision).[11] In that case, Stockton Real Estate Advisors, LLC ("Stockton") demanded commissions from North Broad Associates pursuant to a written Exclusive Listing Agreement, which it claimed had been orally extended "based on the conduct and communications between the parties." **Id.** at *1, *5. Like McNamee, Stockton produced a collection of emails and documents it believed constituted a memorandum memorializing this extension agreement. **Id.** at *5. This Court rejected Stockton's argument, finding the materials demonstrated, at best, that Stockton "wanted, or thought it had, a mutual understanding" to extend the contract. **Id.** As such, there was no written agreement as required by RELRA to allow Stockton to recover commissions on a breach of contract claim. Turning to Stockton's unjust enrichment claim, this Court held that "[a]llowing a party to circumvent RELRA's requirements by resorting to equitable remedies would defeat the purpose of the statute" by allowing a licensee to recover a broker's

_____

Reply Brief, at 3. While it is difficult to discern McNamee's argument because of its conflicting language, McNamee seems to suggest that the statute does not distinguish between advisors and consultants, and therefore McNamee's agreement falls outside RELRA. **Id.** at 3–5. This argument is both waived, since it was not raised before the trial court, in McNamee's Rule 1925(b) statement, or in McNamee's appellant brief, and is incomprehensible.

[11] **See** Pa.R.A.P. 126(b) (this Court's non-precedential memorandum decisions filed after May 1, 2019, may be cited for persuasive value).

commission without agreeing to terms in writing.[12] *Id.* at *6. The same holds true here.

Even if McNamee were able to prove it acted as an "advisor" rather than a broker and, therefore, did not need to meet the requirements for a RELRA-compliant agreement, McNamee cannot recover as an advisor on an unjust enrichment theory. Unjust enrichment is an equitable doctrine, allowing the law to imply a contract that "requires the defendant to pay to the plaintiff the

_____

[12] McNamee relies heavily on *Shafer*, *supra*, and *Durst*, *supra*, claiming these cases support its position that equitable remedies survive statutory requirements for agreements in writing. *See* Appellant's Brief, at 8; Reply Brief, at 3. Both cases were brought pursuant to the Home Improvement Consumer Protection Act (HICPA), which provides: "(a) [] No home improvement contract shall be valid or enforceable against an owner unless it: (1) [i]s in writing and legible" and contains an enumerated list of requirements. 73 P.S. § 517.7(a)(1). The same section, however, also specifies that

> Nothing in this section shall preclude a contractor who has complied with subsection (a) from the recovery of payment for work performed based on the reasonable value of services which were requested by the owner if a court determines that it would be inequitable to deny such recovery.

73 P.S. § 517.7(g). *Durst* and *Shafer* apply specifically to HICPA and its provisions, relying on the plain language of the statute, including a direct reference to equitable recovery. *See, e.g.*, *Keller v. Bank of New York Mellon*, 212 A.3d 52, 59 (Pa. Super. 2019) (rejecting application of *Shafer* in a non-HICPA case). In contrast, *North Broad Assocs.* and the case on which its panel relies, *Com. Realty Grp., Inc. v. Market Square Plaza Assocs.*, 2021 WL 3727161 (Pa. Super. filed Aug. 23, 2021) (unpublished memorandum decision), specifically address RELRA, its plain language, and its legislative purpose in determining that unjust enrichment cannot be used as an end run around its requirements. *North Broad Assocs.*, 2024 WL 2991902, at *6; *Com. Realty Grp.*, 2021 WL 3727161, at *11–*12.

- 16 -

value of the benefit conferred." ***Mitchell v. Moore***, 729 A.2d 1200, 1203 (Pa. Super. 1999). To prove unjust enrichment, a party must demonstrate:

> (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

***Id.*** at 1203–04 (quoting ***Schenck v. K.E. David, Ltd.***, 666 A.2d 327, 328 (Pa. Super. 1995)). A claim for implied contract, or unjust enrichment, "imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." ***Lackner v. Glosser***, 892 A.2d 21, 34 (Pa. Super. 2006) (quotation omitted). "A cause of action for unjust enrichment may arise only when there is no express contract between the parties." ***Khawaja v. RE/MAX Central***, 151 A.3d 626, 633 (Pa. Super. 2016); ***see also Villoresi v. Femminella***, 856 A.2d 78, 84 (Pa. Super. 2004).

As the trial court observes, McNamee pleads that (1) there was an explicit oral agreement between the parties for advisory and brokerage services, confirmed in writing through a series of electronic communications, and (2) McNamee's advisory services fall outside the scope of RELRA and, thus, McNamee should be able to recoup its losses on an unjust enrichment theory. ***See*** Trial Court Opinion, 4/1/25, at 2 n.9, 9–10. These contentions are hopelessly at odds with one another. Where an express contract governs the relationship between parties, "no quantum meruit/unjust enrichment

- 17 -

recovery is permitted." ***Coldwell Banker Phyllis Rubin Real Est. v. Romano***, 619 A.2d 376, 381–82 (Pa. Super. 1993). If RELRA does not apply because McNamee was acting as an advisor, there was no need for the parties' express agreement to conform to RELRA with all material terms properly established in writing. ***See*** Trial Court Opinion, 4/1/25, at 2 n.9, 9–10. Thus, the terms of the express agreement[13] govern, and the parties would be bound by those terms; the courts cannot imply a contract where an express contract exists. ***See Lackner***, 892 A.2d at 34.[14]

---

[13] Even if the agreement were entirely oral (though according to McNamee, it was later reduced to writing in the form of electronic communications), it nonetheless constituted an express agreement. ***See, e.g.***, ***In re Billinger's Estate***, 301 A.2d 795, 795–96, 796–97 (Pa. 1973) (finding valid oral contract where parties discussed terms and reached agreement for domestic services provided); ***Krebs***, 893 A.2d at 783 (court will enforce oral agreements, so long as nature and extent of mutual obligations are determined and parties have agreed on material and necessary details); ***Johnson the Florist, Inc. v. TEDCO Const. Corp.***, 657 A.2d 511, 516 (Pa. Super. 1995) (standard for proving valid oral contract).

[14] In addition to proving that unjust enrichment applies to McNamee's claim, McNamee was also required to demonstrate that Haverford was enriched, and that this enrichment was unjust. The only enrichment McNamee alleges is the purchase of the property. In its complaint, McNamee asserted that it was anticipated, customary, and understood that the advisory services would be included in the brokerage commission, if Haverford paid McNamee a brokerage commission. As McNamee does not allege any specific anticipated fees for its advisory services beyond what might be rolled into its commission, it is not even clear Haverford was enriched at all.

Finally, McNamee needed to prove that any enrichment of Haverford was unjust. ***See, e.g.***, ***Meehan v. Cheltenham Tp.***, 189 A.2d 593, 596 (Pa. 1963). McNamee argued that Haverford's retention of benefits it received from their work together were ill-gotten because (1) Haverford engaged in

*(Footnote Continued Next Page)*

- 18 -

Finally, McNamee argues that the trial court should have allowed it to amend its complaint so it can tailor its claims more clearly to conform to the evidence, assess the scope of the services it rendered to Haverford, and determine whether Haverford was enriched and engaged in sharp dealing. It asserts that the case's procedural posture is favorable to allow amendment, and any prior pleading deficiencies will now be remedied because McNamee's counsel has access to generative AI technology. **See** Appellant's Brief, at 10–11; Reply Brief, at 4. Haverford responds that the defects in McNamee's pleadings are too substantial to be remedied and that McNamee has had two opportunities to plead a viable claim, without success. **See** Appellee's Brief, at 19–22.

_____

"sharp dealing," and (2) Haverford's enrichment came as a result of a confidential relationship or course of dealing marked by inequity. Appellant's Brief, at 7–8. McNamee alleges the transaction involved a significant power imbalance, comparing its relationship to Haverford to that of David to Goliath. **Id.** at 8. In its amended complaint, however, McNamee alleges its principal has "thirty (30) years of experience in real estate that includes business development, investment properties, transactions, and related services suitable for clients' business needs and investment strategies." Amended Complaint, 10/17/24, at ¶ 5. In claiming its value as an advisor, McNamee characterizes itself as a sophisticated party with a significant base of knowledge in its field. McNamee's claimed expertise undermines its self-categorization as a small fish in a big pond that is, therefore, entitled to compensation on the basis of unjust enrichment.

Finally, McNamee's brokerage agreement with seller PDC, attached to the amended complaint, explicitly provides that McNamee's only compensation is to be the commission paid by PDC upon successful sale of the Property. **See** n.8, **supra**. It is thus unclear how McNamee can credibly claim that the transaction was unjust.

The right to amend a complaint "should not be withheld where there is some reasonable possibility that amendment can be accomplished successfully." *Harley Davidson Motor Co., Inc. v. Hartman*, 442 A.2d 284, 286 (Pa. Super. 1982) (quoting *Otto v. American Mut. Ins. Co.*, 393 A.2d 450, 451 (Pa. 1978)). Where amendment would be "a futile exercise," however, "the complaint may be properly dismissed without allowance for amendment." *Carlino v. Whitpain Investors*, 453 A.2d 1385, 1388 (Pa. 1982). Our standard of review for dismissal of a claim with prejudice is abuse of discretion. *Stock v. Arnott*, 608 A.2d 552, 554 (Pa. Super. 1992); *see also Shin v. Brenan*, 764 A.2d 609, 610 (Pa. Super. 2000). "An abuse of discretion is not merely an error of judgment; rather[,] it occurs when the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will." *Stock*, 608 A.2d at 554.

Both McNamee and Haverford cite *Framlau Corp. v. Delaware County*, 299 A.2d 335 (Pa. Super. 1972), to support their positions regarding the possible efficacy of amendment in this case. In *Framlau*, the issue was a discrepancy between the pleading and the documentary evidence attached to the complaint. *Id.* at 338. Here, however, the discrepancies are plain from the face of the amended complaint, as well as McNamee's attachments thereto. Based on the facts pled, no recovery is possible. Regardless of McNamee's attempts to redefine its role in the transaction, its services clearly fell within the scope of RELRA and therefore required an agreement

conforming to its terms. Moreover, unless McNamee intends to retract its allegations that the parties had an express agreement, a finding that McNamee's services did not fall under RELRA does not allow recovery on an unjust enrichment theory.[15] Finally, McNamee's argument that it is more likely to succeed with use of generative AI technology is purely speculative, particularly since McNamee fails to explain how AI might improve upon its factual allegations.[16]

McNamee argues in several places that there are open factual questions that deserve to be developed, largely related to whether the services provided allow it to be characterized as an advisor rather than a broker. *See* Appellant's Brief, at 7–8, 9–10. McNamee's allegation that a licensed broker who acts in an advisory capacity need not comply with RELRA, however, fails as a matter of law, *see North Broad Assocs.*, 2024 WL 2991902, and further development of the facts cannot change this inevitable conclusion.

_____

[15] Where a new pleading contradicts facts pled in the original complaint, that discrepancy may be considered adversely by the court if it is not explained. *See Avondale Cut Rate, Inc. v. Associated Excess Underwriters, Inc.*, 178 A.2d 758, 761–62 (Pa. 1962) (where allegations in amended answer contradicted and were wholly irreconcilable with "the averments of the original in matters essential to a valid defense," defendant needed to provide an explanation to justify the contradictory allegations).

[16] In explaining its dismissal of McNamee's complaint with prejudice, the trial court also references the brokerage agreement between McNamee and seller PDC, *see* n.8, *supra*, to explain why amendment would be futile, noting that in the agreement, McNamee expressly disclaimed any compensation apart from the brokerage commission PDC would pay. *See* Trial Court Opinion, 4/1/25, at 9 n.11.

McNamee's attempt to distinguish between an "advisor" and a "consultant" has no basis in law and cannot be sustained.

In short, the trial court did not abuse its discretion in sustaining Haverford's preliminary objections and dismissing McNamee's complaint with prejudice. *See Stock*, 608 A.2d at 554.

Order affirmed.[17]

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/5/2026

---

[17] After the case was argued, McNamee filed an application for post-submission communication, to which Haverford responded by letter objection. As Haverford notes, McNamee relies on Pa.R.A.P. 2501, which allows post-submission communications only when permitted at the time of oral argument or to advise the Court of a material change in the status of authorities cited in a party's brief. *See* Pa.R.A.P. 2501; *see also* Appellee's Letter Objection to Appellant's Application for Leave to File Post-Argument Submission (citing *Ferguson v. Commonwealth*, 340 A.3d 278, 289 (Pa. 2025); *Stimmler v. Chestnut Hill Hosp.*, 981 A.2d 145 (Pa. 2009); *Commonwealth v. Abdul-Salaam*, 812 A.2d 497 (Pa. 2002)). McNamee's proposed communication does not allege or reference any material change in a cited authority, nor suggest that we requested or permitted additional submissions at the time of oral argument. Instead, it contains facts unsupported by the record and additional argument. Because we agree with Haverford that McNamee's application is not permissible under the Rules of Appellate Procedure, we deny it. Even if we were to accept it, however, it would not change our decision in this case.